**GREENBERG TRAURIG, LLP**
Cindy Hamilton (SBN 217951)
hamiltonc@gtlaw.com
Brian C. Gee (SBN 327436)
geeb@gtlaw.com
1900 University Avenue, 5th Floor
East Palo Alto, CA 94303
Telephone: 650.328.8500
Facsimile: 650.328.8508

Robert J. Herrington (SBN 234417)
Robert.Herrington@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: 310.586.7700
Facsimile: 310.586.7800

Attorneys for Defendant
Prime Hydration LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH CASTILLO, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>PRIME HYDRATION LLC,<br><br>     Defendant. | CASE NO. 3:23-cv-03885-AMO<br><br>Assigned to Hon. Araceli Martínez-Olguín<br><br>**DEFENDANT PRIME HYDRATION LLC'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT UNDER 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>*[Request for Judicial Notice and [Proposed] order filed concurrently]*<br><br>Date:        January 11, 2024<br>Time:        2:00 p.m.<br>Courtroom:  10<br><br>Action Filed:    August 2, 2023 |

TO PLAINTIFF AND TO HER ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on January 11, 2024 at the hour of 2:00 p.m., in Courtroom 10, 19th Floor of the United States District Court, Northern District of California, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Araceli Martínez-Olguín, Defendant PRIME HYDRATION LLC ("Prime") will move for an order dismissing Plaintiff's Complaint under Federal Rules of Civil Procedure 8, 9(b), 12(b)(1), 12(b)(6) and 12(f).

Prime's motion will be made on the grounds that:

(1)    All Plaintiff Elizabeth Castillo's ("Castillo") claims should be dismissed because she has not alleged a cognizable injury in fact.

(2)    Castillo's MMWA claim and putative nationwide class action should be dismissed or stricken because Castillo lacks standing to pursue MMWA claims on behalf of any class.

(3)    All consumer protection and warranty claims should be dismissed because Castillo is improperly attempting to "plead around" the mandatory pre-suit requirements of California Proposition 65.

(4)    Castillo has not stated a claim for violation of any state consumer protection statute because these claims sound in fraud, but Castillo does not allege the claims with particularity.

(5)    Castillo has not stated a claim for violation of any state consumer protection statute based on her misrepresentation theory because no reasonable consumer would be misled.

(6)    Castillo has not stated an omission claim because she does not allege facts showing that Prime had pre-sale knowledge that the grape sports drink purportedly contained PFAS.

(7)    Castillo does not state any equitable claim or request for relief because she alleges an adequate legal remedy in the form of money damages.

(8)    All requests for injunctive relief in the Complaint should be dismissed because Castillo does not allege facts showing a concrete, imminent threat of future harm.

(9)    All Castillo's implied warranty claims should be dismissed because she does not allege that her grape sports drink was unmerchantable or that it lacked fitness for any particular purpose.

This Motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, all pleadings and files in this action, and upon such other oral or documentary evidence as may be presented to the Court at or prior to the hearing on this Motion.

DATED: September 29, 2023                    By:    /s/ Cindy Hamilton

GREENBERG TRAURIG, LLP
Cindy Hamilton
hamiltonc@gtlaw.com
Shauna Imanaka
imanakas@gtlaw.com
1900 University Avenue, 5th Floor
East Palo Alto, CA 92008
Telephone: 650.328.8500

Robert J. Herrington
Robert.Herrington@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: 310.586.7700

Attorneys for Defendant
Prime Hydration LLC

# **TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY OF THE ISSUES ................................................1

II.     SUMMARY OF PLAINTIFF'S ALLEGATIONS ........................................................3

III.    LEGAL STANDARD...................................................................................................4

IV.     ARGUMENT ...............................................................................................................5

        A.      Castillo Alleges No Facts Showing a Cognizable Injury and Thus Does Not
                Have Standing To Assert Any Claim...............................................................5

                1.      Castillo does not allege facts plausibly showing that the bottles of
                        grape sports drink she bought contained PFAS. ..................................5

                2.      Castillo fails to plausibly allege that the purported level of PFAS in
                        Prime's grape sports drink is unsafe. ..................................................7

        B.      The MMWA Claim and Plaintiff's Nationwide Class Allegations Should
                Be Dismissed. ..................................................................................................9

        C.      All Castillo's Claims Are An Improper Attempt to Evade Proposition 65. ....9

        D.      Castillo's UCL, CLRA and FAL Claims All Fail for Additional Reasons. ...10

                1.      Castillo's fraud-based claims should be dismissed because they are
                        vague and conclusory..........................................................................10

                2.      Castillo's misrepresentation theory fails under the reasonable
                        consumer test. .....................................................................................12

                3.      Castillo's omission theory also fails because she does not allege
                        facts showing that Prime had exclusive pre-sale knowledge................15

        E.      All the Claims for Equitable Relief Are Subject to Dismissal........................17

                1.      Castillo seeks actual damages and thus pleads an adequate legal
                        remedy..................................................................................................17

                2.      Castillo Has No Standing to Seek Injunctive Relief Because She Is
                        Merely Speculating that She "May" Buy Prime Again. ........................18

        F.      Castillo's Warranty Claims Fail for Additional Reasons. ...............................19

V.      CONCLUSION............................................................................................................20

MOTION TO DISMISS CLASS ACTION COMPLAINT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. Oct. 11, 2019) ................................................................. 12

*Amas v. Tesla, Inc.*,
2022 U.S. Dist. LEXIS 133028 (N.D. Cal. July 26, 2022) .................................................. 17

*Andrews v. P&G*,
2019 U.S. Dist. LEXIS 211567 (C. D. Cal. June 3, 2019) ......................................... 1, 6, 16

*In re Arris Cable Modem Consumer Litig.*,
2018 U.S. Dist. LEXIS 1817 ......................................................................................... 5, 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................................ 4

*Azoulai v BMW of N. Am.*,
2017 U.S. Dist. LEXIS 58121 (N.D. Cal. Apr. 13, 2017) ................................................... 15

*Banks v. R.C. Bigelow, Inc.*,
536 F. Supp. 3d 640 (C.D. Cal. May 3, 2021) .................................................................... 18

*Bird v. First Alert Inc.*,
2015 U.S. Dist. LEXIS 77209 (N.D. Cal. Jun 15, 2015) .................................................... 11

*Birdsong v. Apple Inc.*,
2008 U.S. Dist. LEXIS 112106 (N.D. Cal. June 13, 2008) ................................................ 20

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) ............................................................................................... 8

*Bowen v. Energizer Holdings, Inc.*,
2023 U.S. Dist. LEXIS 21654 ..................................................................................... 6, 7, 8

*Boysen v. Walgreen Co.*,
2012 U.S. Dist. LEXIS 100528, 2012 WL 2953069 (N.D. Cal. July 19, 2012) ..................... 8

*Brown v. Coty, Inc.*,
2023 U.S. Dist. LEXIS 54316 (S.D.N.Y. Mar. 29, 2023) ..................................................... 1

*Brown v. Starbucks Corp.*,
2019 U.S. Dist. LEXIS 33211 (S.D. Cal. Mar. 1, 2019) ............................................... 12, 14

*Cahen v. Toyota Motor Corp.*,
147 F. Supp. 3d 955 (N.D. Cal. 2015) .............................................................................. 6, 9

*Coffelt v. Kroger Co.*,
    2018 U.S. Dist. LEXIS 140150 (C.D. Cal. Aug. 17, 2018)................................................6

*Dana v. Hershey Co.*,
    1980 F. Supp. 3d 652 (N.D. Cal. Mar. 29, 2016) ...............................................15

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) ........................................................................19

*Drake v. Toyota Motor Corp.*,
    2020 U.S. Dist. LEXIS 227197 (C.D. Cal. Nov. 23, 2020)...............................9

*Eferton DMCC v. Asia-Glob. Renewable Energy Corp.*,
    2016 U.S. Dist. LEXIS 183753 (C.D. Cal. Apr. 22, 2016) .............................11

*Floyd v. Am. Honda Motor Co.*,
    966 F.3d 1027 (9th Cir. 2020) .......................................................................9

*Frenzel v. AliphCom*,
    76 F. Supp. 3d 999 (N.D. Cal. Dec. 29, 2014)...............................................11

*Gagetta v. Walmart, Inc.*,
    2022 U.S. Dist. LEXIS 228044 (N.D. Cal. Dec. 19. 2022)............................20

*Gaminde v. Lang Pharma Nutrition, Inc.*,
    2019 U.S. Dist. LEXIS 48595 (N.D.N.Y. Mar. 25, 2019)..............................6

*Gutierrez v. Johnson & Johnson Consumer, Inc.*,
    2020 U.S. Dist. LEXIS 83556 (S.D. Cal. Apr. 27, 2020)..........................10, 16

*Gutierrez v. Johnson & Johnson Consumer Inc.*,
    2021 U.S. Dist. LEXIS 40826 ......................................................................11

*Guzman v. Polaris Indus.*,
    49 F.4th 1308 (9th Cir. 2022) .......................................................................17

*Hamm v. Mercedes-Benz USA, LLC*,
    2022 U.S. Dist. LEXIS 57705 (N.D. Cal. Mar. 29, 2022)...............................17

*Hamman v. Cava Grp., Inc.*,
    2023 U.S. Dist. LEXIS 85634 (S.D. Cal. Feb. 8, 2023) ..................................16

*Hanna v. Walmart Inc.*,
    2020 U.S. Dist. LEXIS 237505 (C.D. Cal. Nov. 4, 2020)...............................10

*Harris v. R.J. Reynolds Vapor Co.*,
    2016 U.S. Dist. LEXIS 152780 (N.D. Cal. Sept. 30, 2016) ..........................9, 10

*Hauck v. Advanced Micro Devices, Inc.*,
    2019 U.S. Dist. LEXIS 58618 (N.D. Cal. Apr. 4, 2019) ..............................12, 16

MOTION TO DISMISS CLASS ACTION COMPLAINT

*Herrington v. Johnson & Johnson Consumer Co.*,
  2010 U.S. Dist. LEXIS 90505 (N.D. Cal. Sept. 1, 2010) ................................................ 7, 8

*Herron v. Best Buy Co., Inc.*,
  924 F. Supp. 2d 1161 (E.D. Cal. Feb. 13, 2013) ............................................................... 16

*Hodsdon v. Mars, Inc.*,
  891 F.3d 857 (9th. Cir. 2018) .......................................................................................... 15

*Johnson v. Nissan N. Am. Inc.*,
  272 F. Supp. 3d 1168 (N.D. Cal. Aug. 29, 2017) ................................................................ 9

*Kahn v. FCA US LLC*,
  2019 U.S. Dist. LEXIS 134583 (C.D. Cal. Aug. 2, 2019) ................................................ 16

*Kanan v. Thinx Inc.*,
  2021 U.S. Dist. ................................................................................................................... 19

*Kanfer v. Pharmacare US, Inc.*,
  142 F. Supp. 3d 1091 (S.D. Cal. Nov. 4, 2015) ................................................................ 19

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th. Cir. 2009) ..................................................................................... 5, 11

*Klaehn v. Cali Bamboo LLC*,
  2022 U.S. Dist. LEXIS 15440 (9th. Cir. 2022) ................................................................. 16

*Levay Brown, v. AARP, Inc.*,
  2018, U.S. Dist. LEXIS 188258 (C.D. Cal. Nov. 2, 2018) ........................................... 18, 19

*Lisner v. Sparc Grp., LLC*,
  2021 U.S. Dist LEXIS 249558 (C.D Cal. Dec. 29, 2021) .................................................. 18

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .......................................................................................................... 19

*In re Macbook Keyboard Litig.*,
  2020 U.S. Dist. LEXIS 190508 (N.D. Cal. Oct. 13, 2020) ................................................ 18

*Marolda v. Symantec Corp.*,
  672 F. Supp. 2d 992 (N.D. Cal. July 27, 2009) ................................................................. 12

*Martinez v. Johnson*,
  Case No. 5:22-cv-00213-JWH-SHK, 2022 U.S. Dist. LEXIS 198216 (C.D. Cal. Oct.
  22, 2022) ............................................................................................................................. 4

*McGinity v. P&G*,
  69 F.4th 1093 (9th. Cir. June 9, 2023) ......................................................................... 14, 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*McKinney v. Corsair Gaming, Inc.*,
    2022 U.S. Dist. LEXIS 127906 (N.D. Cal. July 19, 2022) .................................................17

*Moore v. Mars Petcare US, Inc.*,
    966 F.3d 1007 (9th Cir. 2020) ..................................................................................................13

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021) ......................................................................................................14

*Moreno v. Vi-Jon LLC*,
    2023 U.S. Dist. LEXIS 124554 (S.D. Cal. July 18, 2023) .......................................................13

*Mort v. United States*,
    86 F.3d 890 (9th Cir. 1996) ......................................................................................................17

*In re Nexus 6P Prods., Liab Litig.*,
    293 F. Supp. 3d 888 (N.D. Cal. Mar. 5, 2018) .......................................................................15

*In re NJOY Consumer Class Action Litig.*,
    2014 U.S. Dist. LEXIS 196586 (C. D. Cal. May 27, 2014) .....................................................16

*of Dist. of Columbia v. Deoleo USA, Inc.*,
    2018 U.S. Dist. LEXIS 190934 (D.D.C. 2018) .........................................................................7

*Onaka v. Shiseido Americas Corp.*,
    2023 U.S. Dist. LEXIS 53220 (S.D.N.Y. Mar. 28, 2023) ..........................................................1

*Papasan v. Dometic Corp.*,
    2017 U.S. Dist. LEXIS 178749 (N.D. Cal. Oct. 27, 2017)........................................................9

*Pels v. Keurig Dr. Pepper, Inc.*,
    2019 U.S. Dist. LEXIS 194909 (N.D. Cal. Nov. 7, 2019)........................................................6

*Punian v. Gillette Co.*,
    2021 U.S. Dist. LEXIS 191225 (N.D. Cal. Mar. 15, 2016)......................................................20

*Richburg v. Conagra Brands, Inc.*,
    2023 U.S. Dist. LEXIS 21137 (N.D. Ill. Feb. 8, 2023) .............................................................1

*Rosenwald v. Kimberly Clark Corp.*,
    2023 U.S. Dist. LEXIS 141968 (S.D. Cal. Jan. 22, 2021) ..............................................12, 13

*Schertzer v. Samsonite Co., Stores, LLC*,
    2020 U.S. Dist. LEXIS 134014 (S.D. Cal. Feb. 25, 2020) ......................................................19

*Solis v. Coty, Inc.*,
    2023 U.S. Dist. LEXIS 38278 (S.D. Cal. Mar. 7, 2023) ...........................................................1

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ..............................................................................................2, 17

*Souter v. Edgewell Pers. Care Co.*,
    2022 U.S Dist. LEXIS 28386 (S.D. Cal. Feb. 16, 2022) ................................................ 14

*Stewart v. Electrolux Home Prods., Inc.*,
    304 F. Supp. 3d 894 (E.D. Cal. Jan. 8, 2018) .......................................................... 15

*Sud v. Costco Wholesale Corp.*,
    229 F. Supp. 3d 1075 (N.D. Cal. Jan. 24, 2017) aff'd, 731 F. App'x 719 (9th Cir. 2018) ................................................................................................................... 16

*Tabler v. Panera LLC*,
    2019 U.S. Dist. LEXIS 187694 (N.D. Cal. Oct. 29, 2019) ....................................... 19

*Teresa Adams v. Cole Haan, LLC*,
    2020 U.S. Dist. LEXIS 176002 (C.D. Cal. Sept. 3, 2020) ....................................... 18

*Tinsley v. KCM Brentwood, LLC*,
    2023 U.S. Dist. LEXIS 146480 (N.D. Cal. Aug. 21, 2023) ..................................... 4, 5

*TransUnion LLC v. Ramirez*,
    141 S.Ct. 2190 (2021) ............................................................................................ 5

*Troup v. Toyota Motor Corp.*,
    545 Fed. App'x 668 (9th Cir. 2013) ...................................................................... 19

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .............................................................................. 10

*Williams v. Tesla, Inc.*,
    2021 U.S. Dist. LEXIS 115279 (N.D. Cal. June 21, 2021) ..................................... 18

*Wu v. iTalk Global Commc'ns, Inc.*,
    2021 U.S. Dist. LEXIS 31496 ............................................................................... 18

*Yu v. Dr. Pepper Snapple Grp., Inc.*,
    2020 U.S. Dist. LEXIS 185322 (N.D. Cal. Oct. 6, 2020) ....................................... 14

*Yulaeva v. Greenpoint Mortg. Funding, Inc.*,
    2010 U.S. Dist. LEXIS 137988 (E.D. Cal. Dec. 21, 2010) ..................................... 11

*Zeller v. Optavia, LLC*,
    2022 U.S. Dist. LEXIS 230895 (S.D. Cal. Dec. 22, 2022) ..................................... 18

**State Statutes**

Cal. Com. Code. § 2314 ................................................................................................. 5

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................... 2, 5, 10, 11, 12, 20

Fed. R. Civ. P. 12(b)(1) ..................................................................................................... 4

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 4

**Other Authorities**

https://ehp.niehs.nih.gov/doi/full/10.1289/EHP10359 ...................................................... 1

https://www.atsdr.cdc.gov/pfas/resources/pfas-faqs.html ................................................ 4

https://www.epa.gov/pfas/our-current-understanding-human-health-and-environmental-
      risks-pfas ................................................................................................................ 4, 7

https://www.epa.gov/pfas/pfas-explained ...................................................................... 4, 7

(https://www.epa.gov/sdwa/and-polyfluoroalkyl-substances-pfas) .................................. 8

https://www.healthline.com/health-news/how-to-reduce-your-exposure-to-pfas-the-
      hidden-toxic-forever-chemicals#What-are-PFAS? ............................................... 4, 7

https://www.michigan.gov/pfasresponse/faq/categories/pfas-related-air-quality-issues ............ 1

(https://www.waterboards.ca.gov/drinking_water/certlic/drinkingwater/pfas.html) ................... 8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND SUMMARY OF THE ISSUES

The case is about a grape sports drink that supposedly contains an incidental and environmentally ubiquitous trace contaminant—one also present in tap water, breast milk[1] and the air itself[2]—called per- and polyfluoralkyl substances or "PFAS" for short. Like similar complaints brought by Castillo's counsel, this one seeks to monetize the pervasive presence of these substances, stretching the bounds of liability beyond reason. Castillo claims she bought "numerous" bottles of a grape sports drink made by Prime. She does not allege that Prime intentionally added PFAS to her sports drink, nor does she assert that Prime represented that the drink contained no PFAS. Castillo also does not plausibly allege that her sports drink contained enough PFAS to be harmful. Instead, she argues that consumers might construe accurate statements about the product's ingredients, flavor, and ability to hydrate as some sort of guarantee that every bottle is PFAS free. But these allegations copy allegations made in different cases filed by her counsel involving products with labeling expressly stating that the products were "natural" or "free from artificial ingredients"—neither of which were on the label for the of the grape sports drink Castillo allegedly bought. The Court should join the growing number of courts that have dismissed similarly vague and speculative PFAS allegations at the pleading stage.[3]

As explained below, the Complaint should be dismissed in its entirety for the following reasons:

**First**, Castillo lacks standing to assert any claim because she does not and cannot plausibly allege that the bottles of Prime sports drink she bought contained PFAS. She also fails to allege facts showing that the purported level of PFAS in these bottles was unsafe.

**Second**, Castillo purports to assert a claim under the Magnuson-Moss Warranty Act ("MMWA") on behalf of a "nationwide class," but this type of MMWA claim requires 100 plaintiffs, and there is just

---

[1] https://ehp.niehs.nih.gov/doi/full/10.1289/EHP10359

[2] https://www.michigan.gov/pfasresponse/faq/categories/pfas-related-air-quality-issues

[3] *See e.g.*, *Andrews v. P&G*, 2019 U.S. Dist. LEXIS 211567, *7-9 (C. D. Cal. June 3, 2019); *Brown v. Coty, Inc.*, 2023 U.S. Dist. LEXIS 54316, *11-13 (S.D.N.Y. Mar. 29, 2023); *Onaka v. Shiseido Americas Corp.*, 2023 U.S. Dist. LEXIS 53220, *12-15 (S.D.N.Y. Mar. 28, 2023); *Richburg v. Conagra Brands, Inc.*, 2023 U.S. Dist. LEXIS 21137, at *22-23 (N.D. Ill. Feb. 8, 2023); *Ruiz v. ConAgra Brands, Inc.*, 2023 U.S. Dist. LEXIS 21137, at *22-23 (N.D. Ill. Feb. 8, 2023); *Solis v. Coty, Inc.*, 2023 U.S. Dist. LEXIS 38278, *33-34 (S.D. Cal. Mar. 7, 2023).

one in this case.

**Third**, Castillo pleads disguised claims under California Proposition 65, but she has not complied with the statute's strict notice and certification of merit requirements.

**Fourth**, the claims under the Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL") and False Advertising Law ("FAL") all fail because they are not alleged with particularity under Rule 9(b). Castillo also fails to plausibly allege that a reasonable consumer would be misled, as the packaging for her Prime sports drink contradicts any suggestion that the drink was "free of artificial ingredients" and only contained "natural ingredients." Castillo's omission theory also fails because she does not and cannot allege facts showing that Prime was aware that her grape sports drink contained PFAS before her purchase.

**Fifth**, the claims for equitable relief under the UCL, CLRA and FAL all fail under *Sonner v. Premier Nutrition Corp.,* 971 F.3d 834, 844 (9th Cir. 2020). Plaintiff cannot assert these equitable claims because she acknowledges that an adequate legal remedy is available in the form of monetary damages.

**Sixth**, Castillo provides no basis for seeking prospective injunctive relief. Her "continued desire" to buy Prime grape sports drink is speculative and does not show any imminent or impending risk of future injury.

**Seventh**, Castillo's implied warranty claims also fail because she alleges no facts showing that her grape sports drink was unmerchantable or lacked fitness for any particular purpose.

Castillo fails to allege any viable claim. Prime respectfully requests that the Court dismiss all Castillo's claims and the Complaint in its entirety.

## II.   <u>SUMMARY OF PLAINTIFF'S ALLEGATIONS</u>

Castillo alleges she bought Prime grape sports drink "numerous times" from El Rey Market, Wal-Mart, 7-Eleven, and Foods Co. in Salinas, California. (Compl. ¶ 78). Other than alleging that she bought the product during "the applicable statute of limitations period," Castillo provides no particulars about these alleged transactions. (*Id*. ¶¶ 78-81). She does not allege how many bottles she bought or specifically when. She does not allege what she paid. She also does not allege facts showing that the particular bottles of Prime sports drinks that she bought were tested and contained PFAS. If anything, Castillo's allegations confirm that the bottles she bought were not tested, as she alleges that she "purchased and consumed Defendant's Product," with no indication of anything left. (*Id.* ¶ 78.)

Castillo's other testing allegations are equally vague. She defines "Product" to mean "Defendant's Prime Hydration Grape Sports Drink" generally, not the specific bottles she allegedly bought. (Compl. ¶ 1.) Castillo claims "independent third-party testing" of "the Product" but not the bottles she allegedly consumed. (*Id.* ¶ 54.) Plaintiff also does not allege who did this testing, what tests were done, how many times, the results, or even whether the results were consistent. (*Id.* ¶¶ 56-59.) Instead, she vaguely alleges that this unidentified testing showed "PFOS" "within the Product" at three times the EPA's "recommended lifetime health advisory for drinking water"—with nothing tying those allegations to the bottles she bought and consumed. (*Id.* ¶ 59.)

Castillo's theory of deception is based on the idea that Prime supposedly represented that her grape sports drink was PFAS-free, even though Prime said nothing of the sort. Her allegations focus on label statements noting the drink's ability to "refresh, replenish, and refuel," with "the perfect boost for every endeavor," along with listing ingredients like vitamins and electrolytes. (Compl. ¶¶ 24, 29, 30). With no facts, Castillo conflates these terms about "hydration" with "health," arguing that the sports drink is "represented as healthy"—even though the term appears nowhere on the label. (Compl. ¶¶ 29-33). Castillo also acknowledges that the label discloses that Prime's grape sports drink contains artificial ingredients like "acesulfame potassium and sucralose as artificial sweeteners" (*id*. ¶ 20), yet she alleges that Prime supposedly engaged "in an aggressive, uniform marketing campaign intended to convince consumers that the Product is *free from artificial ingredients* like PFAS." (*Id*. ¶ 51) (emphasis added). Plaintiff's counsel also appears to have copied several paragraphs from a different complaint involving a

different product with a different label stating that the product was "natural," "nutritious," and "free of artificial ingredients"—even though Prime's grape sports drink does not use these descriptions. (*Id*. ¶¶ 51, 77, 81, 157, 176.)

Castillo alleges that PFAS are "known to negatively impact the human body" including an increased risk of cancer. (Compl. ¶ 84). Yet the sources Castillo cites show she is speculating. Her own sources recognize the "ubiquitous" nature of PFAS in "products and the environment," explaining that PFAS "are impossible to avoid."[4] "Some scientific studies *suggest* that *certain* PFAS *may* affect different systems in the body" and that "*high levels* of certain PFAS" may lead to health issues.[5] These sources acknowledge that there "are thousands of PFAS with potentially varying effects and toxicity levels"[6] and that researchers still working to determine "[h]ow harmful PFAS are to people and the environment."[7] Castillo also admits that the FDA "has not established" regulations for PFAS in food, and "does permit the limited use of PFAS in food contact applications". (Compl. ¶¶ 97-101).

### III.   LEGAL STANDARD

Rule 12(b)(1) provides for the dismissal for lack of subject-matter jurisdiction. *See Martinez v. Johnson*, Case No. 5:22-cv-00213-JWH-SHK, 2022 U.S. Dist. LEXIS 198216, *3 (C.D. Cal. Oct. 22, 2022). "[S]tanding issues are matters implicating subject matter jurisdiction." *Id*. at 4. To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege sufficient facts to state a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A]llegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Tinsley v. KCM Brentwood, LLC*, 2023 U.S. Dist. LEXIS 146480, *3 (N.D. Cal. Aug. 21, 2023). Dismissal can be based on the "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Id*.

---

[4] Compl. ¶ 50, n.30 (citing https://www.healthline.com/health-news/how-to-reduce-your-exposure-to-pfas-the-hidden-toxic-forever-chemicals#What-are-PFAS?).

[5] Compl. ¶ 35, n.15 (citing https://www.atsdr.cdc.gov/pfas/resources/pfas-faqs.html). Emphases are added and internal citations are omitted unless otherwise stated.

[6] Compl. ¶ 44, n.24 (citing https://www.epa.gov/pfas/our-current-understanding-human-health-and-environmental-risks-pfas)

[7] Compl. ¶ 34, n.14 (citing https://www.epa.gov/pfas/pfas-explained)

1  "[T]he non-conclusory 'factual content' and reasonable inferences from that content must be plausibly

2  suggestive of a claim entitling the plaintiff to relief." *Id.*

3      When a plaintiff alleges a unified course of fraudulent conduct and relies on that conduct to state

4  her claims, the claims "sound in fraud" and must be alleged with particularity under Rule 9(b). *See*

5  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). This rule applies because Castillo's

6  claims are all based on alleged misrepresentations about the nature of Prime grape sports drink and

7  failing to disclose that the product supposedly contains unsafe levels of PFAS. She repeatedly alleges

8  fraudulent and deceptive conduct throughout her complaint. (*See e.g.*, Compl. ¶¶ 6, 66, 89, 93, 95-97,

9  158-159, 172.) Thus, Castillo's claims must be alleged with particularity. *See In re Arris Cable Modem*

10  *Consumer Litig.*, 2018 U.S. Dist. LEXIS 1817, *22 (applying Rule 9(b) to claims based on allegedly

11  fraudulent course of conduct). Castillo asserts five counts,[8] each of which should be dismissed.

## IV.   ARGUMENT

**A.   Castillo Alleges No Facts Showing a Cognizable Injury and Thus Does Not Have Standing To Assert Any Claim.**

15      To have standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete

16  particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii)

17  that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S.Ct.

18  2190, 2203 (2021). Castillo has no standing for two reasons. **First**, she does not plausibly allege facts

19  showing that the grape sports drinks she bought contained PFAS. **Second**, even if she could allege that

20  she bought a product containing PFAS, Castillo's alleged economic injury is hypothetical, speculative,

21  and thus not cognizable. All her claims fail on this ground alone.

**1.   Castillo does not allege facts plausibly showing that the bottles of grape sports drink she bought contained PFAS.**

24      Castillo's claims fail at the most basic level. She does not allege facts showing that the

---

[8] The counts include (1) violation of Magnuson-Moss Warranty Act ("MMWA"); (2) violation of Consumer Legal Remedies Act ("CLRA"); (3) violation of California's Unfair Competition Law ("UCL"); (4) violation of the False Advertising Law ("FAL"); and (5) breach of implied warranty of merchantability under the California's Song-Beverly Consumer Warranty Act ("SBA") and California Commercial Code section 2314.

"numerous" bottles of grape sports drink *she bought* actually contained PFAS at any level—let alone one that could be harmful. *See Bowen v. Energizer Holdings, Inc.*, 2023 U.S. Dist. LEXIS 21654, *11 (plaintiff failed to allege that her purchased sunscreen actually or plausibly contained benzene); *Coffelt v. Kroger Co.*, 2018 U.S. Dist. LEXIS 140150, *30 (C.D. Cal. Aug. 17, 2018) (plaintiff lacked standing based on allegations showing only that the product "*may* have been contaminated"); *Pels v. Keurig Dr. Pepper, Inc.*, 2019 U.S. Dist. LEXIS 194909 (N.D. Cal. Nov. 7, 2019) (plaintiff must "plead the water he purchased contained violative arsenic levels," not just that a report identified arsenic in some products). In *Bowen*, for example, plaintiff alleged that she bought sunscreen containing unsafe levels of benzene, citing a third-party testing report indicating that the sunscreen brand she bought tested positive for benzene, along with defendant's decision to recall the sunscreen based on potential contamination. 2023 U.S. Dist. LEXIS 21654, at **3-4. Ruling that plaintiff did not have standing, the court emphasized that there were no allegations that the testing "can be extrapolated across all of Defendants' products or to a specific batch which could have ended up in her purchased sunscreen." *Id.* at *11.

The same is true here. Castillo's allegations are conclusory. She alleges no facts, as distinct from conclusions, plausibly showing that the bottles of Prime sports drink she bought and consumed contained PFAS. She claims that "independent testing" detected "material levels" of PFAS in an unidentified sample of Prime, from an unidentified date. (Compl. ¶¶ 55-56). But these allegations show nothing that "can be extrapolated" across Prime's products "or to a specific batch" that could have been part of what Castillo allegedly bought. *Bowen*, 2023 U.S. Dist. LEXIS 21654 at *11. Thus, Castillo fails to plausibly allege that she bought any Prime product containing PFAS, let alone at unsafe levels. *See Andrews*, 2019 U.S. Dist. LEXIS 211567 at *7 (dismissing when "Plaintiff's sole authority for its allegation that 'Oral-B Glide dental floss contain[s] . . . elevated amounts of PFASs' is the PFASs Study. But the PFASs Study doesn't adequately support this allegation."); *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 967-68 (N.D. Cal. Nov. 25, 2015) ("Judges in this District regularly deny standing in product liability cases where there has been no actual injury and the injury in fact theory rests only on an unproven risk of future harm.").[9]

---

[9] *Accord Gaminde v. Lang Pharma Nutrition, Inc.*, 2019 U.S. Dist. LEXIS 48595, *6 (N.D.N.Y. Mar. 25, 2019) (declining to infer that a bottle of krill oil was defective because an independent study found a

1        **2.      Castillo fails to plausibly allege that the purported level of PFAS in Prime's grape**

2        **sports drink is unsafe.**

3        Even if Plaintiff could plausibly allege that the bottles she bought contained PFAS, she still does

4   not have standing because her injury allegations are speculative. *See, e.g.*, *Herrington v. Johnson &*

5   *Johnson Consumer Co.*, 2010 U.S. Dist. LEXIS 90505, *4 (N.D. Cal. Sept. 1, 2010) (in action involving

6   allegedly carcinogenic baby bath products, risk of harm was "too attenuated and not sufficiently

7   imminent" for standing). In *Bowen*, for example, plaintiff alleged that the level of benzene in her

8   sunscreen made it unsafe, citing an FDA limit of 2 ppm, as well as test results showing benzene

9   concentration in defendant's product exceeding this level. 2023 U.S. Dist. LEXIS 21654 at *17. After

10  reviewing plaintiff's support, the court held that plaintiff "fails to plausibly allege that the level of

11  contaminant in her sunscreen is unsafe." *Id.* The literature plaintiff cited showing a possibility of health

12  issues from varying levels of benzene, but plaintiff provided nothing showing that the benzene

13  concentration found in her product "is likely to cause physical harm," and thus her injury was "too

14  speculative." *Id.* at *17-19.

15       The same analysis applies here. As in *Bowen*, the sources Castillo cites (Compl. ¶¶ 34-50),

16  suggest a speculative risk of harm, recognizing the "ubiquitous" nature of PFAS in "products and the

17  environment,"[10] and acknowledging that there "are thousands of PFAS with potentially varying effects

18  and toxicity levels"[11] and that researchers still working to determine "[h]ow harmful PFAS are to people

19  and the environment."[12] The FDA has not promulgated regulations for PFAS in beverages like Prime

20  sports drink. Ignoring this point, Castillo references the EPA's 2022 interim "lifetime health advisory"

21  for PFOS in drinking water. (Compl. ¶¶ 56. 58-59). But she ignores that, in March 2023, the EPA issued

22

23  defect in two other bottles); *Fahey on behalf of Dist. of Columbia v. Deoleo USA, Inc.*, 2018 U.S. Dist.

24  LEXIS 190934, *6-8 (D.D.C. 2018) (declining to infer that a bottle of olive oil bought in 2018 was
    mislabeled on the basis of a study that tested three bottles of olive oil bought in California in 2010).

25  [10] Compl. ¶ 50, n.30 (citing https://www.healthline.com/health-news/how-to-reduce-your-exposure-to-

26  pfas-the-hidden-toxic-forever-chemicals#What-are-PFAS?).

27  [11] Compl. ¶ 44, n.24 (citing https://www.epa.gov/pfas/our-current-understanding-human-health-and-
    environmental-risks-pfas)

28  [12] Compl. ¶ 34, n.14 (citing https://www.epa.gov/pfas/pfas-explained)

its proposed Maximum Contaminant Levels ("MCL") for PFOS in drinking water at 4 parts per trillion.[13] Castillo also ignores that these proposed drinking water limits *assume* multiple glasses a day, applying those figures over a lifetime using the most sensitive members of the general population—not the occasional sports drink. Even if this guidance could provide some appropriate benchmark, Castillo claims to have detected only about 0.06 parts per trillion (Compl. ¶¶ 58-59.)[14] Even the EPA's proposal would not call for drinking water treatment unless levels were almost *sixty times higher* than Castillo alleges. In other words, Plaintiff does not plausibly allege that the bottles of Prime grape sports drink she bought and consumed were unsafe, meaning any claimed injury is speculative and nonactionable. *See Bowen*, 2023 U.S. Dist. LEXIS 21654 at *17-19.

Castillo cannot evade dismissal by arguing that she suffered economic injury because she would not have bought or would have paid less for her Prime sports drink had she known the supposed "truth." When, as here, plaintiff does not plausible allege that a product is unsafe, a purchase does not establish economic injury. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009) (headphones did not plausibly have defect creating inherent risk of ear injury); *Herrington*, 2010 U.S. Dist. LEXIS 90505 at *16 (similar). In *Boysen v. Walgreen Co.*, for example, plaintiff alleged that defendant failed to adequately disclose the presence of lead and arsenic in its apple and grape juices. 2012 U.S. Dist. LEXIS 100528, 2012 WL 2953069 at *1 (N.D. Cal. July 19, 2012). Plaintiffs alleged that they suffered economic injury because, if they had known that the products contained lead, they would not have purchased them. *Id.* at *4. The court found that this was not a sufficient economic injury because plaintiff did not plausibly show that the amount of lead in the products was unsafe, so they also could not plausibly allege that they had spent money on an unsafe product and thus did not have a plausible economic injury. *Id.* at *5.

The same analysis applies here. As in *Boysen*, Castillo does not plausibly allege that the bottles

---

[13] RFJN, Ex. 1 (https://www.epa.gov/sdwa/and-polyfluoroalkyl-substances-pfas)
[14] This amount is also lower than California's 6.5 parts-per-trillion notification level for PFOS in drinking water.  RFJN, Ex. 2 (https://www.waterboards.ca.gov/drinking_water/certlic/drinkingwater/pfas.html).  Based on the recommendation made by the Office of Environmental Health and Hazard Assessment, California does not require drinking water suppliers to notify the public of the levels of PFOS Castillo claims to have found in the sample of the sports drink.

of Prime sports drink she bought and consumed contained PFAS at unsafe levels. Thus, any economic injury is speculative, and she does not have standing. *See also Cahen*, 147 F. Supp. 3d at 970 ("an economic injury that rests on the risk presented by an underlying product defect fails to establish injury in fact if the underlying risk is itself speculative."); *Papasan v. Dometic Corp.*, 2017 U.S. Dist. LEXIS 178749, at *18 (N.D. Cal. Oct. 27, 2017) ("the economic injury alleged here is vague and speculative: Papasan alleges in a conclusory manner that she 'unknowingly overpaid' for her refrigerator, but "fails to plead any facts plausibly supporting these conclusions."). All her claims should be dismissed.

**B.    The MMWA Claim and Plaintiff's Nationwide Class Allegations Should Be Dismissed.**

Plaintiff asserts one claim under the MMWA on behalf of a purported nationwide class. (Compl. ¶¶ 106, 117-130). Her other claims are asserted only on behalf of a purported California class. The MMWA claim, however, fails as a matter of law. To assert a class action under the MMWA, there must be 100 named plaintiffs, and here there is just one. *See Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1034 (9th Cir. 2020) (holding MMWA's jurisdictional requirement of 100 named plaintiffs controls over other jurisdictional requirements including CAFA). Castillo's MMWA also fails with her state warranty claims, as explained below. *See Drake*, 2020 U.S. Dist. LEXIS 227197, *9-10 (dismissing MMWA nationwide class because these claims "hinge on the state law warranty claims" that plaintiffs lack standing to bring). Thus, Castillo's MMWA claim and nationwide class allegations fail as a matter of law and should be dismissed.[15]

**C.    All Castillo's Claims Are An Improper Attempt to Evade Proposition 65.**

Proposition 65 is a California law stating that "[n]o person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer...without first giving clear and reasonable warning to such individual." *Harris v. R.J. Reynolds Vapor Co.*, 2016 U.S. Dist. LEXIS 152780, *4-5 (N.D. Cal. Sept. 30, 2016). Before "[a] private plaintiff may sue under the warning section of Proposition 65," she must provide "a 60-day notice of the alleged violation and a certificate of merit to the alleged violator, the California Attorney General, and the

---

[15] *See Drake v. Toyota Motor Corp.*, 2020 U.S. Dist. LEXIS 227197, *9-10 (C.D. Cal. Nov. 23, 2020); *Johnson v. Nissan N. Am. Inc.*, 272 F. Supp. 3d 1168, 1175-76 (N.D. Cal. Aug. 29, 2017) (dismissing nationwide class action).

district attorney, city attorney, or prosecutor in each jurisdiction where the alleged violation occurred." *Id.* A private plaintiff like Castillo cannot evade these requirements by trying to use the UCL or other claims to plead around a claim that would be barred by Proposition 65. *Hanna v. Walmart Inc.*, 2020 U.S. Dist. LEXIS 237505, at *5-6 (C.D. Cal. Nov. 4, 2020).

But this is exactly what Castillo is trying to do. She alleges that PFAS are "linked to" cancer and other possible health issues and thus had to be disclosed. (Compl. ¶¶ 2-3, 27, 44, 84). But this is the same type of disclosure theoretically required by Proposition 65. And Castillo's allegation that Prime violated the UCL, CLRA, FAL, and various warranty laws by not making this disclosure is an "implicit" (and improper) Proposition 65 claim. Castillo does not allege that she complied with Proposition 65's pre-suit requirements, and thus her all her claims should be dismissed as an improper attempt to evade Proposition 65. *See Hanna*, 2020 U.S. Dist. LEXIS 237505 at *13.[16]

**D.    Castillo's UCL, CLRA and FAL Claims All Fail for Additional Reasons.**

Plaintiff's UCL, CLRA, and FAL claims fail for three additional reasons: (i) these claims do not satisfy Rule 9(b); (ii) Castillo's misrepresentation theory does not satisfy the reasonable consumer standard; and (iii) any omissions theory fails because Castillo does not allege that Prime had pre-sale knowledge that the bottles she allegedly bought contained PFAS.

**1.    Castillo's fraud-based claims should be dismissed because they are vague and conclusory.**

As shown, Plaintiff's UCL, FAL, and CRLA claim are grounded in fraud (Compl. ¶¶ 51, 77, 79, 138, 159, 170) and thus must allege with particularity the who, what, when, where, and why of Prime's alleged misrepresentations or omissions, along with facts plausibly showing reliance. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Castillo includes a separate section purportedly addressing these requirements. (Compl. ¶¶ 98-105.) But this section raises more questions than it answers and falls well short of the particulars required by Rule 9(b).

***Castillo does not allege the "What."*** Rather than identify the particular marketing statement she

---

[16] *Accord Gutierrez v. Johnson & Johnson Consumer, Inc.*, 2020 U.S. Dist. LEXIS 83556, *16 (S.D. Cal. Apr. 27, 2020) (holding that "any claim under the CLRA, FAL or UCL predicated on a duty to disclose certain carcinogenic substances is dismissed as an attempt to plead around Proposition 65").

viewed and relied on for each purchase, Castillo generically refers to the "labeling, packaging, and marketing materials of the Product," with no particulars. (Compl. ¶ 79). These vague allegations do not show what Plaintiff allegedly viewed and relied on "with particularity" and thus fail to satisfy Rule 9(b). *See Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1014 (N.D. Cal. Dec. 29, 2014) (dismissing claim alleging that plaintiff based his purchase on a review of marketing materials, the label, and representations, because he "fail[ed] to specify which, if any, of these statements [he] personally reviewed and relied on); *Gutierrez v. Johnson & Johnson Consumer Inc.*, 2021 U.S. Dist. LEXIS 40826 *13-14 (S.D. Cal. Jan. 22, 2021) (dismissing misrepresentation claim because plaintiffs only provided their own interpretation of the advertisements but failed to identify the particular advertisements); *Kearns*, 567 F.3d at 1124 ("A party alleging fraud must set forth more than neutral facts necessary to identify the transaction.").

**Castillo does not allege the "When."** Castillo does not allege when she viewed any supposed misrepresentation and alleges only that she bought Prime sports drink "numerous times" during the "class period." (Compl. ¶ 78.) Yet Plaintiff does not limit the purported "class period" and includes tolling allegations indicating that all statutes of limitations have been indefinitely tolled, suggesting and open-ended and ill-defined purported "class period." (*Id.* ¶ 96.) Thus, Castillo has not alleged the "when" at all. This failure is of critical importance given her failure to allege anything tying the purported PFAS testing with any batch, lot, bottle, or sample of Prime sports drink made at any time. Courts have rejected similarly vague timing allegations under Rule 9(b), and this Court should as well. *See Bird v. First Alert Inc.*, 2015 U.S. Dist. LEXIS 77209, *28 (N.D. Cal. June 15, 2015) ("FAC fails to plead facts showing when the transaction occurred (other than 'the winter of 2011-2012')"); *Yulaeva v. Greenpoint Mortg. Funding, Inc.*, 2010 U.S. Dist. LEXIS 137988, *18 (E.D. Cal. Dec. 21, 2010) (period of "months" inadequate); *Eferton DMCC v. Asia-Glob. Renewable Energy Corp.*, 2016 U.S. Dist. LEXIS 183753, *4 (C.D. Cal. Apr. 22, 2016) ("[m]ere general allegations of a multi-month period" inadequate).

**Castillo has not alleged the "Why."** Plaintiff's claims all hinge on the bottles of Prime sports drink that she bought and consumed supposedly containing unsafe levels of PFAS. But as shown, Castillo alleges nothing showing that the bottles she bought contained PFAS, let alone at unsafe levels.

Thus, she has failed to allege the "why" of any misrepresentation or omission with particularity. *See Hauck v. Advanced Micro Devices, Inc.*, 2019 U.S. Dist. LEXIS 58618, *40 (N.D. Cal. Apr. 4, 2019) ("plaintiff must allege why a statement was 'untrue or misleading *when made*'"); *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 559 (N.D. Cal. Oct. 11, 2019) (plaintiffs fail to satisfy 9(b) because they do not plead why the statements are false)

Without these facts, Castillo's UCL, FAL and CLRA claims all fail—whether based on purported misrepresentations or omissions.[17]

### 2. Castillo's misrepresentation theory fails under the reasonable consumer test.

Plaintiff attempts to support her misrepresentation theory by alleging that Prime's "representations about the Product's numerous health benefits . . . are false and misleading because products containing toxic, man-made ingredients like PFAS are not healthy or nutritious by definition." (Compl. ¶ 63). This theory, along with Castillo's UCL, FAL, and CLRA claims, are "governed by the 'reasonable consumer' test.' Under the reasonable consumer standard, [Castillo] must show that members of the public are likely to be deceived." *Rosenwald v. Kimberly Clark Corp.*, 2023 U.S. Dist. LEXIS 141968, *16 (S.D. Cal. Jan. 22, 2021).[18] Castillo's misrepresentation theory fails this test because she alleges nothing plausibly showing that a reasonable consumer is likely to be misled. If anything, her allegations show that her purported interpretation of Prime's packaging is idiosyncratic, unsupported, and unreasonable.

Castillo focuses on five representations on the packaging for Prime grape sports drink:

- "refresh, replenish, and refuel" (Compl. ¶ 1);

[17] *See In re Arris Cable Modem Consumer Litig.*, 2018 U.S. Dist. LEXIS 1817 at * 24 ("[T]his Court and other courts in this circuit have held that a plaintiff does not satisfy Rule 9(b) when the plaintiff generally identifies allegedly misleading statements but fails to specify which statements the plaintiff actually saw and relied upon."); *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. July 27, 2009) (omission theory fails when plaintiff does not "describe the content of the omission and where the omitted information should or could have been revealed, as well as provide representative samples of advertisements, offers, or other representations that [she] relied on to make [her] purchase and that failed to include the allegedly omitted information").

[18] "A court may determine, as a matter of law, that the alleged violations of the UCL, FAL, and CLRA are simply not plausible." *Rosenwald*, 2023 U.S. Dist. LEXIS 141968 at *17. "A [c]ourt can properly make this determination and resolve such claims based on its review of the product packaging. *Brown v. Starbucks Corp.*, 2019 U.S. Dist. LEXIS 33211, *6 (S.D. Cal. Mar. 1, 2019).

- "perfect boost for every endeavor" (*Id.* ¶ 4);
- "10% coconut water, 250 mg branched chain amino acids ("BCCAs"), B-vitamins, 835 electrolytes and antioxidants" (*Id.* ¶¶ 20, 24);
- "to fill the void where great taste meets function" (*Id.* ¶ 21);
- "hydration drink" (Compl. ¶ 23);

(*See* Compl. p. 6-7, 9 [images]). She does not allege that any of these statements are false, misleading, or inaccurate, and she acknowledges that the label does not represent that it does not contain PFAS. (Compl. ¶ 33). Instead, Castillo alleges that these five *accurate* statements would lead a consumer to believe that the grape sports beverage only contained "natural ingredients" and "would not contain harmful man-made PFAS chemicals." (Compl. ¶¶ 65, 77). But she provides no facts plausibly showing a likelihood of deception, and her own allegations contradict her misrepresentation theory.

A plaintiff cannot show deception based on a label "where the front label and back labels convey accurate information and are consistent with each other." *Rosenwald v. Kimberly Clark Corp.*, 2023 U.S. Dist. LEXIS 141968 at *18-19. In *Rosenwald*, for example, the court dismissed claims that representations on the label were misleading because they implied that the product was a germicide. *Id.* at *17. The court ruled that the label was *not* misleading because it did not represent the product as a germicide, the label did not say the product killed germs, and the ingredients listed indicated the product was *not* a germicide. *Id.* at *17-18.

A similar analysis applies here. Nowhere does the label for Prime's sports drink represent that the product is free from "artificial ingredients" and only contained "natural ingredients." The ingredients list shows that the drink contains at least two artificial ingredients including "sucralose" and "acesulfame potassium." (Compl. p. 9 [ingredient label]). Castillo acknowledges that sucralose and acesulfame potassium are "artificial sweeteners" (*id.* ¶ 20), undermining any suggestion that Prime represented that the product was free from "artificial ingredients" and only contained "natural ingredients." *See Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) ("qualifiers in packaging, usually on the back of a label or in ingredient lists, 'can ameliorate any tendency of the label to mislead'"). Thus, Castillo's own allegations and the packaging for the product she claims she bought contradict her misrepresentation theory. *See Moreno v. Vi-Jon LLC*, 2023 U.S. Dist. LEXIS 124554, *23

(S.D. Cal. July 18, 2023) ("Plaintiffs allegations as to how a reasonable consumer would be misled also continues to contradict the packaging of Defendant's Products when read as a whole."); *Souter v. Edgewell Pers. Care Co.*, 2022 U.S Dist. LEXIS 28386, *22 (S.D. Cal. Feb. 16, 2022) ("[R]easonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.").[19]

Common sense also shows that no reasonable consumer would be misled by Prime's label. *See Brown*, 2019 U.S. Dist. LEXIS 33211 at *8 (("[I]t is implausible that a reasonable consumer would conclude the Gummies contain only 'natural ingredients' based on the packaging identifying 'fruit flavors' without disclosing the source"); *Yu v. Dr. Pepper Snapple Grp., Inc.*, 2020 U.S. Dist. LEXIS 185322, *11-13 (N.D. Cal. Oct. 6, 2020) (collecting cases and ruling that no reasonable consumer would believe that products labeled "natural" are free of trace pesticides).[20] In *Brown*, for example, plaintiff alleged that the packaging would mislead consumers to believe that the gummies contained only natural ingredients because it listed the fruit flavors as part of an overall health and wellness campaign. *Brown*, 2019 U.S. Dist LEXIS 33211 at *9-10. The court rejected this theory because plaintiff "fails to explain what connection, if any, exists between Starbucks' health and wellness campaign and its use of artificial ingredients." *Id.* at *10. The court also found that plaintiff failed to plausibly allege that "a reasonable consumer would simply assume the absence of an artificial ingredients disclosure on the Gummies' front packaging means the product only contains natural ingredients." *Brown*, 2019 U.S. Dist LEXIS 33211 at *11.

The same analysis applies here. As in *Brown*, the five statements Castillo focuses on are distinct

[19] *See also Souter v. Edgewell Pers. Care Co.*, 2022 U.S. Dist. LEXIS 28386, *21 (S.D. Cal. Feb. 16, 2022) ("At the motion to dismiss stage, qualifying language on packaging, usually on the back label, that clarifies the meaning of the alleged misrepresentation can 'ameliorate any tendency of the label to mislead, as would violate California's False Advertising Law (FAL), Unfair Competition Law (UCL), and Consumer Legal Remedies Act (CLRA).").

[20] *Accord McGinity v. P&G*, 69 F.4th 1093, 1098-99 (9th Cir. June 9, 2023) (affirming dismissal of plaintiff's all natural misrepresentation claims because the phrase "Nature Fusion" does not promise the product is wholly natural and the back label ingredients clarifies that some of the ingredients are artificial); *Moore v. Trader Joe's Co.*, 4 F.4th 874, (9th Cir. 2021) (affirming that no reasonable consumer would be misled into thinking that "100% New Zealand Manuka Honey" meant the honey was 100% derived from Manuka flower nectar because given the foraging nature of bees, it is impossible to produce honey that is derived exclusively from a single flower source).

from whether Prime sports drink "was free of harmful man-made chemicals like PFAS." (Compl. ¶ 79). She also fails to allege a nexus between any marketing campaign that allegedly targeted health-conscious consumers and the PFAS purportedly in the grape sports drink. She alleges nothing showing that a reasonable consumer, after reviewing Prime's label, would reasonably conclude that a ubiquitous contaminant like PFAS was completely absent. *See McGinity*, 69 F.4th at 1097 ("The touchstone under the 'reasonable consumer' test is whether the product labeling and ads promoting the products have a meaningful capacity to deceive consumers."). Thus, Castillo has not satisfied the reasonable consumer test, and her misrepresentation claims fail.

### 3. Castillo's omission theory also fails because she does not allege facts showing that Prime had exclusive pre-sale knowledge.

Castillo also alleges an omission theory under the UCL and CLRA.[21] "[T]o be actionable, the omission must be contrary to a representation actually made by the defendant, or an omission of fact the defendant was obliged to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018). Castillo's omission theory fails for three reasons.

***First***, Castillo fails to allege facts plausibly showing that Prime was aware there was PFAS in its grape sports drink *before* her purchases. "To state a claim for failing to disclose a defect[,]" plaintiff must plausibly allege "that the manufacturer knew of the defect at the time a sale was made." *Azoulai v BMW of N. Am.*, 2017 U.S. Dist. LEXIS 58121, *26 (N.D. Cal. Apr. 13, 2017). This pre-sale knowledge must go to the "specific" issue alleged, not some generalized concern about safety. *See Stewart v. Electrolux Home Prods., Inc.*, 304 F. Supp. 3d 894, 908 (E.D. Cal. Jan. 8, 2018) ("[A] plaintiff is typically required to allege *how* the defendant obtained knowledge of the specific defect prior [to] the plaintiff's purchase of the defective product.").

Castillo cannot satisfy these requirements. She fails to allege *when* she bought *any* Prime sports drink and claims Prime "knew" or "should have known" that its grape sports drink contained PFAS at some unknown time (Compl. ¶ 60)—with no supporting facts. *See In re Nexus 6P Prods., Liab Litig.*,

---

[21] Castillo cannot base an FAL claim on omissions: "There can be no FAL claim where there is no 'statement' at all—or in other words an omission, even of material facts does not violate the FAL." *Dana v. Hershey Co.*, 1980 F. Supp. 3d 652, 668 (N.D. Cal. Mar. 29, 2016).

293 F. Supp. 3d 888, 927 (N.D. Cal. Mar. 5, 2018) ("[A] defendant cannot 'disclose facts which it was unaware.").[22] Courts have rejected similarly vague knowledge allegations, and so should this Court. *See In re NJOY Consumer Class Action Litig.*, 2014 U.S. Dist. LEXIS 196586, * 44 (C. D. Cal. May 27, 2014) (rejecting allegations that manufacturer was "in a superior position to know").[23]

**Second**, Castillo's own allegations show that Prime did not have "exclusive knowledge" that a beverage like Prime sports drink might have trace levels of PFAS. Castillo cites a collection of public articles discussing the ubiquitous presence of PFAS in the environment, food, and other products. (*See, e.g.*, Compl. ¶¶ 34-50, n.14-30). These articles show that information about the pervasive nature of PFAS—and the risk that it is present in almost any product—is public and thus not "exclusive" or special to Prime. *See Sud v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1087 (N.D. Cal. Jan. 24, 2017) aff'd, 731 F. App'x 719 (9th Cir. 2018) (dismissing omission claim where plaintiffs admitted information was publicly available); *Andrews*, 2019 U.S. Dist. LEXIS 211567 at *8 (dismissing because the PFAS study did not support plaintiff's omission claim since it only "hypothesized" that the product might be "a potential exposure source for PFAS); *Hauck*, 2019 U.S. Dist. LEXIS 58618 at * 35-36 (N.D. Cal. Apr. 4, 2019) (dismissing omission claims because "vague, sweeping statements" from industry research do not show a defendant's pre-sale knowledge).[24]

**Third**, Castillo does not allege facts showing active concealment. "Mere nondisclosure does not constitute active concealment." *Herron v. Best Buy Co., Inc.*, 924 F. Supp. 2d 1161, 1176 (E.D. Cal. Feb. 13, 2013). Instead, Castillo must allege specific "affirmative acts on the part of the [D]efendant is hiding, concealing or covering up the matters complained of." *Id.* at 1176. Yet she alleges nothing showing concealment or that Prime had a duty to disclose the (supposed) presence of PFAS in its grape sports drink. *See Hamman v. Cava Grp., Inc.*, 2023 U.S. Dist. LEXIS 85634, *24 (S.D. Cal. Feb. 8,

---

[22] *Klaehn v. Cali Bamboo LLC*, 2022 U.S. Dist. LEXIS 15440, *5 (9th Cir. 2022) (affirming dismissal of omission claims based on the insufficiency of plaintiffs' allegations about defendant's knowledge).

[23] *Kahn v. FCA US LLC*, 2019 U.S. Dist. LEXIS 134583, *11 (C.D. Cal. Aug. 2, 2019) (finding allegations conclusory because plaintiff did not identify "any particular testing, reports, or otherwise that gave Defendant knowledge about the rear wire harness issues").

[24] *Gutierrez*, 2020 U.S. Dist. LEXIS 83556 at *19 ("Plaintiffs had access to numerous publicly available scientific publications and other widely disseminated articles from The New York Times and The Washington Post regarding the presence of contaminants in talc products.").

2023) (dismissing omission claims due to insufficiency of plaintiff's allegations). Castillo's omission claims thus fail for all these reasons.

**E.    All the Claims for Equitable Relief Are Subject to Dismissal.**

Castillo's equitable claims and requests for equitable relief under the UCL, FAL, and CLRA should be dismissed under *Sonner v. Premier Nutrition Corp.,* 971 F.3d 834, 844 (9th Cir. 2020), and because Plaintiff does not allege any basis for prospective injunctive relief.

**1.    Castillo seeks actual damages and thus pleads an adequate legal remedy.**

"It is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law." *Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996) (quotations omitted). As the Ninth Circuit held in *Sonner*, when, as here, a plaintiff fails to show that legal remedies are inadequate, equitable claims should be dismissed. 971 F.3d at 944; *see also Guzman v. Polaris Indus.*, 49 F.4th 1308, 1313 (9th Cir. 2022) (rejecting attempts to distinguish Sonner on procedural grounds). The reasoning in Sonner applies with particular force when the plaintiff seeks money damages. *See Hamm v. Mercedes-Benz USA, LLC*, 2022 U.S. Dist. LEXIS 57705, *6 (N.D. Cal. Mar. 29, 2022) ("[T]he availability of an adequate legal remedy is clear from the face of the [complaint.]").

Castillo seeks damages based on alleged overpayments based on the same purported conduct underlying her equitable claims. (Compl. ¶ 76). She seeks "restitution" (*id*. ¶¶ 165, 178) and "injunctive or equitable relief" (*id*. ¶ 150), based on her alleged harm of buying Prime's grape sports drink without disclosing that is supposedly contains PFAS. (*Id*. ¶¶ 143 (CLRA), 157 (UCL), 169 (FAL)). At the same time, Castillo seeks "damages" and "compensatory damages" under the CLRA and implied warranty claims based on the same alleged conduct. (*Id*. ¶¶ 130 (MMWA), 149 (CLRA)). Thus, Castillo's own allegations show she has an available and adequate legal remedy.

Castillo attempts to evade dismissal with three generic allegations, all of which fail:

*First*, she alleges that she seeks restitution "if monetary damages are not available." (Compl. ¶¶ 165, 178). But she fails to show how or why damages are unavailable or inadequate in the first place and thus has not satisfied *Sonner*. *See McKinney v. Corsair Gaming, Inc.*, 2022 U.S. Dist. LEXIS 127906, *26 (N.D. Cal. July 19, 2022) ("Plaintiffs have not pleaded that damages are inadequate[.]"); *Amas v.*

*Tesla, Inc.*, 2022 U.S. Dist. LEXIS 133028, *4 (N.D. Cal. July 26, 2022) ("This Court has previously required that plaintiffs offer some explanation as to why their legal remedies are inadequate.").

 *Second*, Castillo alleges that "even if damages were available, such relief would not be adequate to address the injury suffered by [plaintiffs]." (*Id.* ¶¶ 165, 178). But courts have rejected this type of generic allegation, which provides nothing showing how or why damages are unavailable or inadequate. *See e.g.*, *Zeller v. Optavia, LLC*, 2022 U.S. Dist. LEXIS 230895, *23 (S.D. Cal. Dec. 22, 2022) ("Plaintiffs' arguments that equitable claims provide greater remedy and are easier to prove does not make their equitable claims proper.").

 *Third*, Castillo alleges that "a public injunction must be provided in order to enjoin Defendant's continued harm of consumers and the public at large." (Compl. ¶ 86). But the alleged future harm is financial (*id.* ¶ 81), and Castillo does not show why the alleged potential for future *monetary* harm cannot be remedied through damages. *See Banks v. R.C. Bigelow, Inc*., 536 F. Supp. 3d 640, 649 (C.D. Cal. May 3, 2021) (dismissing UCL and FAL claims when plaintiffs "failed to plausibly allege that a legal remedy for . . . future harm would be inadequate").[25] Thus, Castillo has no basis to avoid dismissal of her equitable claims and requests for equitable relief under the UCL, FAL, and CLRA. *See Lisner v. Sparc Grp., LLC*, 2021 U.S. Dist LEXIS 249558, *25 (C.D Cal. Dec. 29, 2021) (granting motion to dismiss equitable relief under UCL, FAL, and CLRA when damages available).[26]

## 2. Castillo Has No Standing to Seek Injunctive Relief Because She Is Merely Speculating that She "May" Buy Prime Again.

 To seek prospective injunctive relief, "a plaintiff must allege an 'actual and imminent,' or '*certainly impending*' injury." *Levay Brown, v. AARP, Inc.*, 2018, U.S. Dist. LEXIS 188258, *7 (C.D.

---

[25] *See also*, *Wu v. iTalk Global Commc'ns, Inc*., 2021 U.S. Dist. LEXIS 31496, *9 (C.D. Cal. Feb. 2, 2021) (dismissing UCL claim where damages were available because "lost money is the exact type of harm that money damages can adequately remedy . . . whether suffered in the past or potentially suffered in the future"); *In re Macbook Keyboard Litig*., 2020 U.S. Dist. LEXIS 190508, *12 (N.D. Cal. Oct. 13, 2020) (plaintiffs argued their injury was "continuing" but did not "explain why those consumers could not sufficiently be 'made whole' by monetary damages").

[26] *Williams v. Tesla, Inc*., 2021 U.S. Dist. LEXIS 115279, *19-22 (N.D. Cal. June 21, 2021) (dismissing claims for equitable relief under CLRA, UCL, and FAL); *Teresa Adams v. Cole Haan, LLC*, 2020 U.S. Dist. LEXIS 176002, *2-3 (C.D. Cal. Sept. 3, 2020) (dismissing UCL, FAL, and CLRA claims).

Cal. Nov. 2, 2018) (quoting *Davidson v. Kimberly-Clark Corp.,* 889 F.3d 956, 967 (9th Cir. 2018) (emphasis in original)). "[T]he threat of injury must be actual and imminent, not conjectural or hypothetical." Davidson, 889 F.3d at 967 (internal quotation marks omitted). Thus, "allegations of *possible* future injury are not sufficient." *Id*. (internal quotation marks omitted).

Castillo generically alleges that she "continues to desire" to purchase Prime sports drink in the future "if" she can rely that it is "safe and free from any artificial ingredients, including those known to pose a risk to human health." (Compl. ¶ 81). But "[m]ere profession of 'some day' intentions—without any description of concrete plans or indeed any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Levay Brown*, 2018, U.S. Dist. LEXIS 188258 at *7 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992)); *accord Schertzer v. Samsonite Co., Stores, LLC*, 2020 U.S. Dist. LEXIS 134014, *27 (S.D. Cal. Feb. 25, 2020) (dismissing claims for injunctive relief where plaintiff alleged only "that she 'may in the future shop at [d]efendant's Samsonite outlet store'"); *Tabler v. Panera LLC*, 2019 U.S. Dist. LEXIS 187694, *23 (N.D. Cal. Oct. 29, 2019) (dismissing request for injunctive relief where plaintiff alleged "only the *possibility* of future injury arising from the fact that [p]laintiff '*may* purchase the Products in the future'"). Castillo has thus failed to show impending future harm and does not have standing to seek injunctive relief.

**F.   Castillo's Warranty Claims Fail for Additional Reasons.**

Plaintiff's implied warranty claims also fail because she alleges no facts showing that her grape sports drink was unmerchantable or lacked fitness for any particular purpose. (Comp. ¶ 184). To show unmerchantability, Castillo must allege a defect so severe that it "drastically undermine[s] the ordinary operation of the [product]." *Troup v. Toyota Motor Corp.*, 545 Fed. App'x 668, 669 (9th Cir. 2013). This standard requires facts plausibly showing that (1) "the goods do not conform to the promises or affirmations contained on the container or label," *Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1104 (S.D. Cal. Nov. 4, 2015), or (2) "the product does not possess even the most basic degree of fitness for ordinary use." *Kanan v. Thinx Inc.*, 2021 U.S. Dist. LEXIS 191225, * (C.D. Cal. June 23, 2021) (dismissing merchantability claim alleging that underwear contained unsafe PFAS levels). Castillo generically alleges that Prime represents the grape sports drink as "free from artificial ingredients like

PFAS," (Compl. ¶¶ 51, 81), but these words appear nowhere on the label. (*See* Compl. p. 6-7, 9 [image of grape sports drink label]). And Castillo has also not alleged that the bottles of grape sports drink she bought were unfit for consumption, failed to perform as sports drinks, or caused her any harm whatsoever. Thus, she has not alleged unmerchantability. *See Gagetta v. Walmart, Inc.*, 2022 U.S. Dist. LEXIS 228044, *28 (N.D. Cal. Dec. 19. 2022) (dismissing implied warranty claims because plaintiffs failed to allege facts showing that herbs and spices were "unfit for their 'ordinary purpose' as food products, or were 'unfit for consumption, or were 'not merchantable or fit for use as' herbs and spices").

Castillo's implied warranty of fitness claim is even weaker. For this claim, Plaintiff is required to show that Prime knew or had reason to know (i) the particular purpose for which she intended to use the grape sports drink, and that (ii) she was relying on Prime's special skill or judgment. *See Kanan*, 2021 U.S. Dist. LEXIS 191225 at *21 ("A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of her business[.]").Castillo alleges nothing on these points. *See Punian v. Gillette Co.*, 2021 U.S. Dist. LEXIS 191225, *59 (N.D. Cal. Mar. 15, 2016) ("To state a claim, Plaintiff's particular purpose must differ from the ordinary purpose for Duralock Batteries."); *Birdsong v. Apple Inc.*, 2008 U.S. Dist. LEXIS 112106 (N.D. Cal. June 13, 2008) ("Plaintiff also fail to allege that they relied on Defendant's judgment to select a product in the iPod line which would be suitable for their purposes or that Defendant knew that Plaintiff's were relying on that judgment"). Thus, she has no valid implied warranty claim.

## V.   <u>CONCLUSION</u>

Castillo has no cognizable claim. She alleges nothing plausibly showing that the bottles of Prime sports drink she allegedly bought at unknown times contained PFAS, let alone at unsafe levels. She does not allege the particularized facts required by Rule 9(b). Her equitable claims fail because she alleges an adequate legal remedy. And her warranty claims are unsupported and misplaced. The Complaint should be dismissed in its entirety.

DATED: September 29, 2023

By: /s/ *Cindy Hamilton*

GREENBERG TRAURIG, LLP
Cindy Hamilton
hamiltonc@gtlaw.com
Shauna Imanaka
imanakas@gtlaw.com
1900 University Avenue, 5th Floor
East Palo Alto, CA 92008
Telephone: 650.328.8500

Robert J. Herrington
Robert.Herrington@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: 310.586.7700

Attorneys for Defendant
Prime Hydration LLC

MOTION TO DISMISS CLASS ACTION COMPLAINT