UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH CASTILLO,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>PRIME HYDRATION LLC,<br><br>　　　　Defendant. | Case No. 23-cv-03885-AMO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 28 |

This case is about false advertising on sports drink labels. Prime Hydration LLC's motion to dismiss was heard before this Court on April 18, 2024. Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss for the following reasons.

**I.　BACKGROUND**

　**A.　Factual Background**

Defendant Prime Hydration LLC ("Prime Hydration") formulates, manufactures, markets, and sells Grape Sports Drink ("Sports Drink" or "product"). First Amended Complaint ("FAC") (ECF 26) ¶¶ 1, 5.[1] Prime Hydration sells Sports Drink directly to consumers through its website, at convenience stores, and at grocery stores. FAC ¶ 26. Castillo alleges that the product advertises healthy ingredients but instead contains harmful "per- and polyfluoralkyl substances" ("PFAS" or "forever chemicals"), rendering various representations false and misleading.

---

[1] The Court accepts Castillo's allegations in the complaint as true and construes the pleadings in the light most favorable to Castillo. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

FAC ¶¶ 1-2, 28.  The front and side labels of Grape Sports Drink are depicted below:

 

FAC ¶¶ 28-29.  Castillo alleges that the drink "boasts" about healthy ingredients, as the label states that it contains "250 mg BCAAs, B Vitamins, antioxidants, and 835 mg electrolytes." FAC ¶¶ 29-34.  The label also states that the drink helps "refresh, replenish, and refuel," and lists the first ingredient as "filtered water."  FAC ¶¶ 35-39.

 

2

FAC ¶¶ 35, 37.

Castillo conducted independent third-party testing and found "material levels of PFAS" in the product. FAC ¶¶ 60-62. PFAS are "highly persistent and potentially harmful man-made chemicals" that are "not naturally occurring." FAC ¶¶ 40-41. PFAS include Perfluorooctanoic acid ("PFOA") and Perfluorooctanesulfonic acid ("PFOS"). FAC ¶ 41. Exposure to certain levels of PFAS may lead to reproductive effects, developmental delays, increased risk of certain cancers, reduced immune system functionality, and other harmful effects. FAC ¶¶ 50-51. Even "trace" levels of PFAS can harm humans. FAC ¶ 66. The EPA health advisory levels for exposure to certain PFAS in drinking water is 0.004 part per trillion (ppt) for PFOA and 0.02 ppt for PFOS. FAC ¶ 67. Castillo's testing showed that the product contains one and a half times the lifetime health advisory for PFOA and three times the lifetime health advisory for PFOS. FAC ¶ 72. Nowhere on the product does Prime Hydration indicate that there are PFAS chemicals in the drink.

### B. Procedural Background

Castillo filed her class action complaint on August 2, 2023, ECF 1, and the First Amended Complaint, the operative complaint, on October 13, 2023. FAC (ECF 28). She asserts claims for: (1) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.* ("MMWA"), (2) violation of California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), (3) violation of all three prongs of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* (the "UCL"), (4) violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ( "FAL"), (5) and breach of implied warranty under the Song-Beverly Act, Cal. Civ. Code §§ 1790, *et seq.* and Cal. Comm. Code § 2314. FAC ¶¶ 154-167, 168-187, 188-202, 203-215, 216-228. Castillo seeks to represent a nationwide class and a California class of "all persons who Purchased the Product . . . for personal use and not for resale." FAC ¶¶ 143-44.

## II. DISCUSSION

Prime Hydration challenges Castillo's standing for lack of injury under Federal Rule of Civil Procedure 12(b)(1). Additionally, Prime Hydration moves to dismiss the FAC under Federal

3

1   Rule of Civil Procedure 12(b)(6) for failure to state a claim. Because standing is a threshold issue,

2   the Court addresses it first. *Bates v. United Parcel Service, Inc.*, 511 F.3d 974, 985 (9th Cir.

3   2007).

### A.   Article III Standing

Prime Hydration argues that Castillo lacks standing because she does not allege facts plausibly showing that the bottles of Sports Drink that she bought contained PFAS, and she fails to plausibly allege that the level of PFAS in the drink is unsafe. Mot. (ECF 28) at 15-18. To have standing under Article III of the Constitution, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, (2016), *as revised* (May 24, 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Article III "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996).

A "quintessential injury-in-fact" can occur when plaintiffs allege that they "spent money that, absent defendants' actions, they would not have spent." *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011). Castillo alleges that she purchased the Grape Sports Drink, which she would not have purchased, or would have paid less, if she had known that it contained PFAS. FAC ¶¶ 84-87. "Similar allegations in the food labeling context have repeatedly been held sufficient to establish an economic injury for purposes of both constitutional and statutory standing." *Rice-Sherman v. Big Heart Pet Brands, Inc.*, No. 19-CV-03613-WHO, 2020 WL 1245130, at *6 (N.D. Cal. Mar. 16, 2020) ("*Big Heart*") (citing cases); *see, e.g.*, *Hamman v. Cava Grp., Inc.*, No. 22-CV-593-MMA (MSB), 2023 WL 3450654, at *5 (S.D. Cal. Feb. 8, 2023) (finding that plaintiffs pleaded economic injury for standing where they alleged that "they would not have purchased Defendant's Products or would have paid less for them had they known the truth about the Products – that their packaging contained 'heightened levels of organic fluorine,' an indicator of PFAS," and that PFAS are dangerous even in small quantities); *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 961-62 (N.D. Cal. 2013) (finding plaintiff's allegations that he would not have purchased misbranded fruit products absent defendants' representations sufficient for conferring standing, even where plaintiff did not allege physical harm); *Jones v.*

4

1  *ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 901 (N.D. Cal. 2012) (concluding that allegation that plaintiffs would not have purchased a product if it had been labeled accurately was sufficient to establish injury under California's consumer laws).

Prime Hydration further argues that Castillo has not alleged that "the 'numerous' bottles of Grape Sports Drink that she bought actually contained PFAS at any level . . . [.]" Mot. at 15. At this stage, however, Castillo does not need to allege that her specific purchases contained PFAS as she alleges that testing showed substantial levels of PFAS in the product. *See, e.g.*, *Solis v. Coty, Inc.*, No. 22-CV-0400-BAS-NLS, 2023 WL 2394640, at *11 (S.D. Cal. Mar. 7, 2023) (holding that plaintiff was not required to allege specific unit of product she purchased contained PFAS because "district courts must accept the allegations of the complaint as true and draw all reasonable inferences from those allegations in favor of the plaintiff"); *Big Heart*, 2020 WL 1245130, at *7 (finding standing where plaintiffs alleged that defendants advertised that dog food was grain-free but testing found that it was not because "[n]owhere in the FAC do plaintiffs allude that some of [defendant's product] is grain-free but that a subset of the product is not"). Prime Hydration cites *Bowen v. Energizer Holdings, Inc.*, No. CV214356MWFAGRX, 2023 WL 1786731, at *2-3 (C.D. Cal. Jan. 5, 2023), for the proposition that plaintiffs must connect testing to the specific product purchased. Mot. at 15-17. This argument is not persuasive. In *Bowen*, the sunscreen bottle that the plaintiff purchased was tested and found to contain 0.29 parts per million (ppm) of a carcinogen benzene, but FDA guidance permits up to 2 ppm of benzene in sunscreen. *Id.* at *4-5. The court found that plaintiff's injury was too speculative as there were no allegations that the level of benzene in the purchased sunscreen was likely to cause physical harm. *Id.* at *6. By contrast, Castillo alleges that independent testing revealed PFAS in the Sports Drink – at a level higher than the recommended EPA's 2022 lifetime advisory for drinking water. FAC ¶¶ 8, 60-62, 67, 72.

Prime Hydration also argues that there is only a speculative risk of harm of PFAS because the chemicals are "ubiquitous," there are "thousands of PFAS with potentially varying effects and toxicity levels," and the EPA has issued drinking water regulations which state that the proposed goal for maximum contaminant levels for PFOA and PFAS is zero and the proposed maximum

5

1     contaminant levels is 4.0 ppt (whereas Castillo only detected 0.06 ppt).  Mot. at 16-17; ECF 18,

2     Ex. 1.[2]  However, as Castillo explained at the hearing, the EPA's proposed maximum

3     contamination level for public water is a different standard from the interim lifetime health

4     advisory that Castillo cites, and the former did not supersede the latter.[3]  Thus, Castillo has

5     plausibly alleged that the level of PFAS in Grape Sports Drink is unsafe.  FAC ¶¶ 52, 66, 72, 121.

6     This case is distinct from *Boysen v. Walgreen Co.*, No. C 11-06262 SI, 2012 WL 2953069, at *2

7     (N.D. Cal. July 19, 2012), a case on which Prime Hydration relies.  In *Boysen*, the plaintiff alleged

8     that he suffered economic injury by purchasing apple juice that was misleadingly marketed as

9     healthy but contained lead and arsenic.  Although the levels of lead and arsenic in the juices were

10    higher than FDA guidelines for bottled water, the court reasoned that there was no standing

11    because the FDA had concluded that the levels of lead and arsenic in commercial fruit juices such

12    as defendant's were safe and the levels of arsenic and lead in apply juice fellow below FDA

13    guidance.  *Id.* at *1, 5-6.  Distinctly, the FDA has not issued any relevant guidelines here and the

14    EPA advisory Plaintiff cites to remains unchallenged.

15            Although Prime Hydration may later show that the levels of PFAS in Grape Sports Drink

16    are safe, at this stage, the Court declines to resolve this "hotly contested issue of fact" as it goes to

17    the merits of Castillo's claims.  *See Gagetta v. Walmart, Inc.*, 646 F. Supp. 3d 1164, 1173 (N.D.

18    Cal. 2022) (taking as true plaintiff's allegations that Walmart spices contained dangerous heavy

19    metals and declining to resolve at the motion to dismiss stage whether the levels of metals are

20    unsafe); *see also Rodriguez v. Mondelez Glob. LLC*, 703 F. Supp. 3d 1191, 1205 (S.D. Cal. 2023),

---

[2] The Court may take judicial notice of undisputed matters of public record, *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), and information on government entities' websites, *Daniels–Hall v. National Education Association,* 629 F.3d 992, 999 (9th Cir. 2010) (citations omitted).  The Court takes judicial notice of the EPA proposed PFAS National Primary Drinking Water Regulation and State Water Resources Control Board.  RJN (ECF 18), Exs. 1-2.

[3] After the Court's hearing on the instant motion to dismiss, Prime Hydration filed a notice of the EPA's Final PFAS National Primary Drinking Water Regulation.  ECF 53.  Castillo moves to strike the notice of new authority pursuant to Civil Local Rule 7-3(d), which prohibits filing of supplementary materials after a reply is filed, without prior Court approval, unless a party offers a relevant judicial opinion (published after the opposition or reply) prior to the noticed hearing date.  Prime Hydration filed the EPA notice after the motion hearing.  Accordingly, the Court **GRANTS** the administrative motion to strike Defendant's notice of new authorities.  ECF 54.

*reconsideration denied*, 2024 WL 1361892 (S.D. Cal. Mar. 29, 2024) (concluding that plaintiffs plausibly alleged that no amount of lead or cadmium is safe for human consumption and that what constitutes an "unsafe level" is a "question of fact not appropriately resolved on a motion to dismiss").

By alleging that she purchased the product during the class period and that independent testing showed unsafe levels of PFAS, Castillo has established standing. For this reason, the Court **DENIES** Prime Hydration's motion to dismiss for lack of standing.

### B. Sufficiency of Castillo's Allegations

Prime Hydration also moves to dismiss the FAC for failure to state a claim. Prime Hydration argues that: (1) Castillo's claims are an improper attempt to evade Proposition 65; (2) the UCL, CLRA, and FAL claims are not well-pled, fail under the reasonable consumer test, and Prime Hydration did not have exclusive pre-sale knowledge; (3) the warranty claims fail; and (4) the claims for equitable relief fail. Mot. at 18-30. Prime Hydration also moves to dismiss the Magnuson-Moss Warranty Act ("MMWA") claim and Castillo's nationwide class allegations. *Id.* at 18. Castillo does not oppose dismissal of the MMWA claim. Opp. (ECF 34) at 7 n.1. Accordingly, the Court **GRANTS** the motion and dismisses the MMWA claim. Because the MMWA claim was the only claim asserted on behalf of a purported nationwide class, the Court also dismisses the corresponding nationwide class allegations. After setting forth the relevant legal standard, the Court addresses the parties' remaining arguments.

#### 1. Legal Standard

Federal Rule of Civil Procedure 8 requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss, the factual allegations " 'must . . . suggest that the claim has at least a plausible chance of success.' " *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) (quoting *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013) (alterations in original)). In ruling on the motion, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable

7

to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).

"[A]llegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)). The court may dismiss a claim "where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim." *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011) (citing *Johnson v. Riverside Healthcare Sys., LP,* 534 F.3d 1116, 1121 (9th Cir. 2008)). "[T]he non-conclusory 'factual content' and reasonable inferences from that content must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

Because Castillo's claims sound in fraud, her complaint must also meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) requires a party alleging fraud or mistake to state with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b). To satisfy this standard, the complaint must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation and internal quotation marks omitted).

### 2. Proposition 65

Under California Proposition 65, "[n]o person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or reproductive toxicity without first giving clear and reasonable warning to such individual" where the amount of exposure exceeds the "no significant risk level" established by the California Environmental Protection Agency's Office of Environmental Health Hazard Assessment ("OEHHA"). Health & Saf. Code §§ 25249.6, 25249.10(c). The OEHHA listed PFOA as a chemical known to the state to cause developmental issues in 2017 and cancer in 2022. The OEHHA listed PFOS as a chemical known to the state to cause developmental issues in 2017.

8

*See* Cal. Code Regs. § 27001(b).

"Proposition 65's warning requirement can be enforced by a public or private enforcement action . . . [.]" *Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 787 (N.D. Cal. 2015) (citing *Cal. Chamber of Com. v. Brown*, 196 Cal. App. 4th 233, 239 (2011) (citing Cal. Health & Saf. Code § 25249.7(a), (b))). A plaintiff may privately enforce Proposition 65's warning requirement only if the plaintiff has provided notice more than 60 days from the commencement of the lawsuit to, among others, the Attorney General, and to the alleged violator. Cal. Health & Safety Code § 25249.7(d)(1). In other words, "[s]tatutory notice is a mandatory condition precedent to establishing a citizen's right to commence a Proposition 65 enforcement action in the public interest." *Ctr. for Self–Improvement & Cmty. Dev. v. Lennar Corp.*, 173 Cal. App. 4th 1543, 1551 (2009).

Prime Hydration argues that all of Castillo's claims are an improper attempt to evade Proposition 65. Mot. at 18-19. In order to assess whether Castillo has attempted to "plead around" Proposition 65, the Court considers whether the claims are "entirely derivative of an unspoken Proposition 65 violation, or whether [Castillo] assert[s] claims independent of Proposition 65." *Sciortino*, 108 F. Supp. 3d at 791-92; *see Harris v. R.J. Reynolds Vapor Co.*, No. 15-CV-04075-JD, 2016 WL 6246415, at *2 (N.D. Cal. Sept. 30, 2016) (concluding that "[a] plaintiff cannot sidestep [notice] requirements by trying to use the UCL or CLRA to plead around a claim that would be barred under Proposition 65."). Claims may be "derivative of Proposition 65" where the "gravamen" of the complaint seeks to "vindicate a right created by Proposition 65." *Sciortino*, 108 F. Supp. 3d at 792 (finding claims entirely derivative of Proposition 65 where plaintiff alleged he would not have purchased Pepsi One if he had known it contained a chemical at a level that required a Proposition 65 warning); *see also Hanna v. Walmart Inc.*, 2020 WL 7345680, at *3 (C.D. Cal. Nov. 4, 2020) (persuading that complaint's emphasis on glyphosate "is about a 'failure to warn' and as such does not provide for an 'independent claim under the UCL'") (citation omitted).

Here, in addition to allegations that PFAS can lead to cancer, reproductive harm, and birth defects, FAC ¶¶ 2, 3, 50, 54, 64, 77, 121, Castillo alleges that PFAS can lead to reduced immune

9

1    response, hormonal distribution, increased cholesterol, obesity, and cardiovascular issues, FAC ¶¶

2    50, 64, 121.  Thus, her claims are not entirely derivative of Proposition 65.  *See Rodriguez*, 703 F.

3    Supp. 3d at 1208 (concluding that plaintiffs alleged an independent duty to disclose irrespective of

4    Proposition 65 where they alleged that lead and cadmium pose a risk of cancer and reproductive

5    issues as well as additional health problems such as damage to brain development, liver, kidneys,

6    and bones).  Moreover, Castillo alleges more than mere failure to disclose the presence of forever

7    chemicals in the product.  Castillo posits that Grape Sports Drink's advertising is also misleading

8    by implying that the product is healthy.  FAC ¶¶ 28-37, 63, 75.  For example, Castillo notes that

9    Grape Sports Drink highlights antioxidants, vitamins, and electrolytes, and includes labels that it is

10   "hydrat[ing]" and "replenish[ing]."  FAC ¶¶ 28, 35.  Such allegations also make clear that

11   Castillo's claims go beyond the failure to disclose pursuant to Proposition 65.  *See, e.g.*, *Bland v.*

12   *Sequel Nat. Ltd.*, 2019 WL 4658361, at *4 (N.D. Cal. Jan. 18, 2019) (concluding that plaintiffs'

13   allegations support a "duty to disclose irrespective of Proposition 65" where plaintiff alleged that

14   Defendants had an "independent duty to disclose based on their partial representations about the

15   healthfulness of the [] Products" and plaintiff alleged that consumption of the product can cause

16   various health complications in addition to cancer and reproductive harm).  Ultimately, the

17   pleadings allege harm beyond Proposition 65.  The Court therefore **DENIES** Prime Hydration's

18   motion to dismiss this action on Proposition 65 grounds.

19              **3.       Sufficiency of Allegations Under the UCL, FAL, and CLRA**

20   Castillo brings three causes of action under California statutes: the Consumer Legal

21   Remedies Act ("CLRA"), the Unfair Competition Law ("UCL"), and the False Advertising Law

22   ("FAL").  Cal. Civ. Code § 1770 (CRLA); Cal. Bus. & Prof. Code § 17200 (UCL), Cal. Bus. &

23   Prof. Code § 17500 (FAL).  Prime Hydration argues that Castillo fails to state a claim under the

24   CLRA, UCL, and FAL because (1) she fails to allege facts establishing that the challenged

25   representations on the product label are likely to deceive a reasonable consumer; (2) she fails to

26   plead specific allegations that satisfy Rule 9(b); and (3) she does not allege that Prime Hydration

27   had exclusive pre-sale knowledge.  Mot. at 19-26.  Because the Court finds that the claims fail

28   under the reasonable consumer test, it need not consider whether the claims independently fail

10

1   under Rule 9(b) or exclusive pre-sale knowledge.

### i.      Reasonable Consumer Test

"Under the consumer protection laws of California, . . . claims based on deceptive or misleading marketing must demonstrate that a 'reasonable consumer' is likely to be misled by the representation." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021); *see Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003). "The California Supreme Court has recognized that these laws prohibit not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (internal quotation marks omitted) (quoting *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 951 (2002)). The reasonable consumer test requires more than a mere possibility that defendant's product "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). Rather, the test requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.*; *see also Moore*, 4 F.4th at 881. Generally, "whether a reasonable consumer would be deceived . . . [is] a question of fact not amenable to determination on a motion to dismiss." *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014); *see Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). "However, in rare situations a court may determine, as a matter of law, that the alleged violations of the UCL, FAL, and CLRA are simply not plausible." *Ham*, 70 F. Supp. 3d at 1193.

Castillo brings her claims under theories of misrepresentation and omission. The Court examines each.

### a.      Misrepresentation Theory

To plausibly allege a CLRA, FAL, or UCL claim based on misrepresentation, plaintiffs "must allege that they relied on a misrepresentation and suffered injury as a result." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1083 (N.D. Cal. 2022) (citing *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1092 (1993)). California courts recognize four themes of "reasonable consumer"

11

jurisprudence – "literal truth," "common sense," the "front-back problem," and "nature of the brand name." *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156, 1172 (2018). Castillo appears to proceed under a "common sense" theory and alleges that the following representations on the label – though not literally false – were misleading because they would lead a reasonable consumer to believe that Grape Sports Drink contained only "healthy and natural ingredients" and "would not contain harmful man-made PFAS chemicals." FAC ¶¶ 84, 97. The labels included the following statements:

- "refresh, replenish, and refuel" (FAC ¶ 35);
- "perfect boost for every endeavor" (FAC ¶ 35);
- "10% coconut water, branched chain amino acids ("BCCAs"), B-vitamins, electrolytes and antioxidants" (FAC ¶¶ 24, 29);
- "to fill the void where great taste meets function" (FAC ¶ 25);
- "hydration drink" (FAC ¶ 28);
- "filtered water" (FAC ¶ 39)

"[G]eneral, vague statements about product superiority" are insufficient to mislead consumers. *Silver v. BA Sports Nutrition, LLC*, 2020 WL 2992873, at *1, 4-5 (N.D. Cal. June 4, 2020) (finding that sports drinks marketed with flavors such as "Fruit Punch," "Blackout Berry," and "Grape," and advertising that they provide "superior" and "better" hydration and are "packed with Vitamin E [and C]" are vague statements that do not misdescribe a "specific or absolute characteristic of the product"); *see also Manchouck v. Mondelez Int'l Inc.*, 2013 WL 5400285, at *1-3 (N.D. Cal. Sept. 26, 2013), *aff'd*, 603 F. App'x 632 (9th Cir. 2015) (finding that cookie packaging that stated "made with real fruit" when cookies contained only fruit puree would not mislead a reasonable consumer). Castillo alleges that Grape Sports Drink represents that it helps consumers "refresh, replenish, or refuel," is the "perfect boost for every endeavor" and "fill[s] the void where great taste meet function." FAC ¶¶ 25, 35. These statements are too vague and general to mislead a reasonable consumer. *See, e.g.*, *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1087-88 (N.D. Cal. 2017) (concluding that statements such as "great start," "sets us up to do our best," a "touch of sweetness," and "keep[s] you full and focused" were "generalized, vague,

12

and unspecified assertions" that were not actionable) (citations omitted).

Castillo also contends that the product label "purposefully highlights" that Grape Sports Drink contains electrolytes, BCAAs, B vitamins, and antioxidants "in order to convince consumers that the Product is, in fact, a healthy drink that is good for the body." FAC ¶¶ 29-34. However, the product label also lists ingredients, including "artificial sweeteners" such as "sucralose" and "acesulfame potassium." FAC ¶¶ 24, 37. "[Q]ualifiers in packaging, usually on the back of a label or in ingredient lists, 'can ameliorate any tendency of the label to mislead.' " *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020) (citing *Brady*, 26 Cal. App. 5th at 1167). Thus, even if a reasonable consumer were to believe that emphasizing vitamins and electrolytes indicates that the Sports Drink contains healthy and natural ingredients, this belief would be dispelled by the artificial ingredients listed on the label. *See Silver*, 2020 WL 2992873 at *8 (concluding that a reasonable consumer purchasing a sports drink in a flavor such as Grape or Tropical Fruit "would not be misled into thinking that simply because the label states that it provides 'Superior Hydration' and contains vitamins and electrolytes, that this necessarily means anything about the overall health benefits of the product given the disclosure of the sugar content."); *Brown v. Starbucks Corp.*, 2019 WL 996399, at *4 (S.D. Cal. Mar. 1, 2019) (finding that the complaint "fails to plausibly allege that a reasonable consumer would simply assume the absence of artificial ingredients disclosure on the Gummies' front packaging means the product contains only natural ingredients"). Thus, Prime Hydration's statements would not mislead a reasonable consumer.

Moreover, unlike the cases cited by Castillo, nowhere on the labeling does it state that the Sports Drink is healthy, nutritious, or good for consumers. *Cf. Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 965 (N.D. Cal. 2022) (finding that "the prominent use of the word 'health' and the homophonic connection between 'ade' and 'aid' make it plausible that reasonable consumers would construe 'Health-Ade' to mean healthy"); *LeGrand v. Abbott Lab'ys*, 655 F. Supp. 3d 871, 891 (N.D. Cal. 2023) (reasoning that statements such as "nutrition shake," "complete, balanced nutrition," and "#1 doctor recommended" plausibly could mislead consumers into believing the product was healthy).

13

1    Finally, Castillo alleges that listing the first ingredient as "filtered water" is misleading

2 because a reasonable consumer would believe that "Defendant's filtration process would have

3 removed any incidental impurities or chemicals." Opp. at 18 (citing FAC ¶ 39). However,

4 Castillo cites no authority for this proposition. Moreover, Castillo fails to convince where several

5 courts have rejected a similar theory that reasonable consumers might understand the word

6 "natural" to indicate that a food product is "completely free of any trace pesticides." *Hawyuan Yu*

7 *v. Dr Pepper Snapple Grp., Inc.*, 2020 WL 5910071, at *4-5 (N.D. Cal. Oct. 6, 2020) (citing

8 cases). The Court therefore finds that using the phrase "filtered water" would not mislead a

9 reasonable consumer into believing that there were no PFAS in the product.

10   Accordingly, Castillo has not plausibly alleged that a reasonable consumer would be

11 misled by the representations on the label of Grape Sports Drink, and her claims cannot proceed

12 on this theory.

### b. Omission

14   California consumer protection laws also allow for "omission theor[ies] of consumer

15 fraud." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018). "[T]o be actionable the

16 omission must be contrary to a representation actually made by the defendant, or an omission of a

17 fact the defendant was obliged to disclose." *Id.* (quoting *Daugherty v. Am. Honda Motor Co.*, 144

18 Cal. App. 4th 824, 834 (2006)). To establish a duty to disclose under California law, a plaintiff

19 must plead that (1) "the defendant is in a fiduciary relationship with the plaintiff," (2) "the

20 defendant ha[s] exclusive knowledge of material facts not known to the plaintiff," (3) "the

21 defendant actively conceals a material fact from the plaintiff," or (4) "the defendant makes partial

22 representations but also suppresses some material fact." *Falk v. Gen. Motors Corp.*, 496 F. Supp.

23 2d 1088, 1094-95 (N.D. Cal 2007) (quoting *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336

24 (1997) (citation omitted)).

25   Castillo proceeds under the exclusive knowledge theory and alleges that Prime Hydration

26 omitted material facts about the ingredients and safety of its products (i.e., the presence of PFAS),

27 and had exclusive knowledge of the ingredients used in Grape Sports Drink, as well as its quality

28 control processes. Opp. at 19 (citing FAC ¶¶ 73, 124). However, Castillo pleads no factual

allegations to support the contention that Prime Hydration knew about the existence of PFAS in the Grape Sports Drink when it was sold. To show "actual knowledge," a plaintiff must allege "how the defendant obtained knowledge of the specific defect . . . [.]" *Stewart v. Electrolux Home Prod., Inc.*, 304 F. Supp. 3d 894, 908 (E.D. Cal. 2018) (citing *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145-48 (9th Cir. 2012)). "[G]eneralized assertion[s] that . . . [a] manufacturer had 'access to the aggregate information and data regarding the [alleged] risk . . .' " are "speculative and do[] not suggest how any tests or information could have alerted [the manufacturer] to the defect." *Wilson*, 668 F.3d at 1147 (citing cases); *see also Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 974 (N.D. Cal. 2008), *aff'd*, 322 F. App'x 489 (9th Cir. 2009) (concluding that allegations that the company had "exclusive knowledge as the manufacturer" failed to contain any factual basis or satisfy Rule 9(b)'s heightened pleading requirements). Castillo fails to plead any factual allegations showing that Prime Hydration had exclusive knowledge – or any knowledge – about the presence of PFAS in the product.[4] Therefore, Castillo cannot proceed under an omission theory and the Court **GRANTS** the motion to dismiss the CLRA, FAL, and UCL claims.

### iii. Equitable Relief

Having concluded that Castillo's claims are insufficiently pled, the Court need not reach Prime Hydration's arguments that Castillo's claims for equitable relief under the UCL, FAL, and CLRA should be dismissed. Mot. at 26. Nevertheless, for Castillo's benefit, the Court addresses Prime Hydration's arguments.

"It is well-established that claims for relief under the FAL and the UCL are limited to restitution and injunctive relief." *Roffman v. Rebbl, Inc.*, 653 F. Supp. 3d 723, 731 (N.D. Cal. 2023) (citing *Korea Supply Co. v. Lockheed Martin*, 29 Cal. 4th 1134, 1146-49 (2003)). In contrast, the CLRA provides for equitable relief and for damages. Relying on *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), and *Guzman v. Polaris Industries, Inc.*, 49 F.4th

---

[4] Prime Hydration also argues that the "ubiquitous presence of PFAS in the environment, food, and other products" show that information about the "pervasive nature of PFAS" is not "exclusive" to Prime. Mot. at 25. The Court does not find this argument persuasive as Castillo has alleged that Prime Hydration, as the manufacturer, controlled the ingredients used and quality control processes. FAC ¶ 73.

15

1308 (9th Cir. 2022), Prime Hydration contends that Ninth Circuit law clearly resolves this issue in its favor and warrants dismissal of the claims for equitable relief. Mot. at 26.

In *Sonner*, a mislabeling class action involving "Joint Juice," the plaintiff initially brought claims for equitable relief under the UCL and CLRA and for damages under the CLRA. 971 F.3d at 838. On the eve of trial, after litigating the case for four years, the plaintiff dismissed her state law damages claim and elected to move forward only on the state law equitable claims for restitution and injunctive relief. *Id.* at 837. The district court then dismissed the restitution claims because an adequate remedy at law, i.e., damages, was available. *Id.* On appeal, the Ninth Circuit affirmed the dismissal because the plaintiff "fail[ed] to establish that she lack[ed] an adequate remedy at law" in the UCL and CLRA, holding that "a federal court must apply traditional equitable principles before awarding restitution under the UCL and CLRA." *Id.* at 841, 844.

In *Guzman*, also a mislabeling case, the district court granted summary judgment in favor of the defendants and dismissed the plaintiff's UCL claim with prejudice. 49 F.4th at 1310. The Ninth Circuit affirmed in part and reversed in part. *Id.* Based in part on *Sonner*, the Ninth Circuit affirmed the portion of the district court order dismissing the UCL claim. *Id.* at 1313. It agreed that the plaintiff had an adequate remedy at law through his CLRA claim for damages, even though he could no longer pursue the claim because it was time-barred. *Id.* at 1313. As to the portion of the district court's order that dismissed the UCL claim with prejudice, the Ninth Circuit reversed with instructions to dismiss without prejudice for lack of equitable jurisdiction, which would allow the plaintiff to re-file the claim in state court. *Id.* at 1315.

Here, *Sonner* and *Guzman* do not mandate dismissal of Castillo's claims because the decisions "require far less at the pleading stage." *See In re Natera Prenatal Testing Litig.*, 664 F. Supp. 3d 995, 1012 (N.D. Cal. Mar. 28, 2023). However, Castillo fails to allege why damages would be inadequate or provide any allegations about the adequacy of the various remedies.

Castillo seeks restitution "if monetary damages are not available," or even if they are available because "such relief would not be adequate to address the injury suffered . . . [.]" FAC ¶¶ 202, 215. She also seeks "injunctive and equitable relief" to "enjoin Defendant from continuing its deceptive advertising and sales practices." FAC ¶ 187. These allegations are not sufficient to

1  survive the motion to dismiss as Castillo has not alleged why damages would not make her whole
2  or why they are inadequate. *See Roffman*, 653 F. Supp. 3d at 731 (granting motion to dismiss and
3  allowing plaintiff leave to amend her allegations regarding the inadequacy of her legal remedies
4  where allegations about the inadequacy of legal remedies were conditional and plaintiff "d[id] not
5  suggest that she s[ought] a different amount in damages than she d[id] in restitution" or that there
6  was a limitation inherent to the available legal remedy itself that would make it inadequate); *Bryan*
7  *v. Apple*, 2023 WL 2333893, at *3 (N.D. Cal. Mar. 2, 2023) (granting motion to dismiss on a
8  "narrow basis" where plaintiffs did not explain how their claims for damages and equitable relief
9  were based on different theories and did not allege that they lacked an adequate remedy at law);
10 *Smith v. Apple, Inc.*, 2023 WL 2095914, at *3 (N.D. Cal. Feb. 17, 2023) (dismissing claims for
11 equitable relief based on *Sonner* and *Guzman* where the plaintiffs had "not adequately alleged that
12 their remedies at law are inadequate" or "address[ed] why monetary damages would be inadequate
13 to make [p]laintiffs whole."); *cf. Murphy v. Olly Pub. Benefit Corp.*, 651 F. Supp. 3d 1111, 1129
14 (N.D. Cal. 2023) (declining to dismiss the request for equitable relief where the plaintiffs alleged
15 that legal remedies were not as certain as equitable remedies because, for example, a full refund
16 would require a showing that the product at issue had no market value but no such showing was
17 required for restitution). For these reasons, even if Castillo's UCL, FAL, and CLRA claims had
18 been sufficiently plead, the Court would have dismissed Castillo's claims for equitable relief with
19 leave to allege that a legal remedy would be inadequate.

### 4. Implied Warranty Claims

21 Castillo also alleges that the Sports Drink was not fit for the particular purpose of human
22 consumption and was not merchantable. Castillo contends that Prime Hydration breached both its
23 implied warranty of fitness and merchantability because the labels implied that the drink was
24 unadulterated and safe. Opp. at 23 (citing FAC ¶¶ 101-06, 162-63, 221-26). The Court analyzes
25 both the implied warranty of fitness for a particular purpose and the implied warranty of
26 merchantability below.
27 "An implied warranty of fitness for a particular purpose arises only where (1) the purchaser
28 at the time of contracting intends to use the goods for a particular purpose, (2) the seller at the time

of contracting has reason to know of this particular purpose, (3) the buyer relies on the seller's skill or judgment to select or furnish goods suitable for the particular purpose, and (4) the seller at the time of contracting has reason to know that the buyer is relying on such skill and judgment." *Keith v. Buchanan*, 173 Cal. App. 3d 13, 25 (1985) (citation omitted); *see Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1021 (N.D. Cal. 2014). "A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1295 n. 2 (1995) (citation omitted). Castillo argues that the intended purpose of the product, "a drink, was to drink it." Opp. at 24. This is not a "particular purpose," but rather the ordinary purpose for which a sports drink is used. *See Am. Suzuki*, 37 Cal. App. 4th at 1295 n.2. Thus, Castillo cannot proceed under a theory of implied warranty of fitness for a particular purpose.

Distinctly, the implied warranty for merchantability requires that goods "(1) pass without objection in the trade under the contract description; (2) are fit for the ordinary purpose for which those goods are used; (3) are adequately contained, packaged, and labeled; and (4) conform to the promises or affirmation of fact made on the container or label." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 n.2 (9th Cir. 2009). The implied warranty of merchantability "provides for a minimum level of quality" in a good. *Am. Suzuki Motor Corp.*, 37 Cal. App. 4th at 1296 (citation omitted). To state a claim for breach of the implied warranty of merchantability, a plaintiff must allege a "fundamental defect that renders the product unfit for its ordinary purpose." *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 878 (N.D. Cal. 2015) (citation omitted); *see also Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1303 (2009) ("The core test of merchantability is fitness for the ordinary purpose for which such goods are used.") (citation omitted). "Such fitness is shown if the product is in safe condition and substantially free of defects[.]" *Mexia*, 174 Cal. App. 4th at 1303 (internal quotation marks and citation omitted).

"In cases involving human food, a party can plead that a product violates the implied warranty of merchantability through allegations that the product was unsafe for consumption,

1 contaminated, or contained foreign objects." *Barnes v. Nat. Organics, Inc.*, 2022 WL 4283779, at
2 \*8 (C.D. Cal. Sept. 13, 2022) (citing *Thomas v. Costco Wholesale Corp.*, 2014 WL 5872808, \*3
3 (N.D. Cal. Nov. 12, 2014) (citation omitted)). Castillo alleges that the dangerous chemicals
4 present in the Grape Sports Drink compromised its safety and fitness for consumption. Opp. at
5 23-24 (citing FAC ¶¶ 221-26). The FAC states that PFAS found in Defendant's product are
6 "poisonous or deleterious" and "indisputably linked to negative health consequences."
7 FAC ¶ 101. Further, the PFOA and PFOS found in the product exceed the EPA's recommended
8 limit for drinking water. FAC ¶ 102. These allegations are sufficient at this stage. *See Barnes*,
9 2022 WL 4283779, at \*8 (finding breach of implied warranty sufficiently pleaded where plaintiffs
10 alleged that the product promoted a healthy pregnancy but was actually contaminated with heavy
11 metals and was thus not favorable for pregnancy); *Rodriguez*, 703 F.Supp.3d at 1212-13 (same
12 where plaintiffs alleged that the products were unsafe for consumption because they contained
13 high levels of lead or cadmium). Accordingly, the Court **DENIES** Prime Hydration's motion to
14 dismiss the implied warranty of merchantability claim.

### III.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Prime Hydration's motion to dismiss for lack of standing. The Court **DENIES** the motion to dismiss the breach of the implied warranty of merchantability claim and **GRANTS** the motion to dismiss the claim for breach of implied warranty of fitness for a particular purpose with leave to amend. The Court **GRANTS** the motion to dismiss the MMWA claim and corresponding nationwide class allegations without leave to amend. The Court **GRANTS** Prime Hydration's motion to dismiss with leave to amend the

///
///
///
///
///
///
///

CLRA, UCL, and FAL claims for failure to state a claim. Any amended complaint must be filed by **October 9, 2024**. No additional parties or claims may be added without leave of Court or stipulation of Defendant.

**IT IS SO ORDERED.**

Dated: September 9, 2024

_____

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**