UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH CASTILLO,<br><br>    Plaintiff,<br><br>    v.<br><br>PRIME HYDRATION LLC,<br><br>    Defendant. | Case No. 23-cv-03885-AMO<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. No. 66 |

In this case about "forever chemicals" in sports drinks, Defendant Prime Hydration LLC moves for judgment on the pleadings. Dkt. No. 66. The motion is fully briefed and the Court determined it was appropriate for determination without oral argument. *See* Dkt. No. 75. This Order assumes familiarity with the facts and procedural history of this case, including this Court's order granting in part and denying in part Prime Hydration's motion to dismiss Plaintiff Elizabeth Castillo's first amended complaint, Dkt. No. 56. Having carefully reviewed the parties' papers and the arguments made therein, as well as the relevant legal authority, the Court hereby **GRANTS IN PART** and **DENIES IN PART** the motion for the following reasons.

I.    **DISCUSSION**

Prime Hydration moves for judgment on the pleadings as to the remaining claim in Castillo's first amended complaint for breach of implied warranty of merchantability under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, and the California Commercial Code, Cal. Comm. Code § 2314(1). Prime Hydration argues Castillo's claim for breach of implied warranty under the Song-Beverly Act fails as a matter of law because the statute does not apply to consumables. *See* Motion for Judgment on the Pleadings ("Mot.") (Dkt. No. 66) at 8. In her Opposition, Castillo consents to dismissal of this claim. *See* Opposition ("Opp.") (Dkt. No. 71) at

1   2 n.1.  Prime Hydration's motion for judgment on the pleadings as to this claim is therefore

2   **GRANTED**.  Accordingly, Castillo's implied warranty of merchantability claim under the

3   California Commercial Code remains.

### A.  Legal Standard

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law."  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citing *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 979 (9th Cir. 1999)).  A Rule 12(c) motion is reviewed using the same standard as a Rule 12(b) motion.  *Dworkin v. Hustler Mag., Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  Accordingly, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted).  Courts "may consider facts that 'are contained in materials of which the court may take judicial notice.' "  *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999).  "[I]f a party presents evidence outside the pleadings and the court does not exclude that evidence, then 'the motion must be treated as one for summary judgment.' "  *Bain v. United Healthcare Inc.*, No. 15-CV-03305-EMC, 2016 WL 4529495, at *5 (N.D. Cal. Aug. 30, 2016) (quoting Fed. R. Civ. P. 12(d)).

### B.  Breach of Implied Warranty Under Cal. Comm. Code § 2314

Castillo alleges Prime Hydration breached the implied warranty of merchantability because its sports drink (the "Product") contained a category of synthetic chemicals called per- and polyfluoralkyl substances ("PFAS") and was therefore unsafe for consumption.  First Amended Complaint ("FAC") (Dkt. No. 26) ¶¶ 1, 221.  The implied warranty of merchantability "provides for a minimum level of quality" in a good, *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 (1995) (citation omitted), and requires that goods "(1) pass without objection in the trade under the contract description; (2) are fit for the ordinary purpose for which those goods are used; (3) are adequately contained, packaged, and labeled; and (4) conform to the

2

1    promises or affirmation off act made on the container or label," *Birdsong v. Apple, Inc.*, 590 F.3d
2    955, 958 n.2 (9th Cir. 2009).  To state a claim for breach of the implied warranty of
3    merchantability, a plaintiff must allege a "fundamental defect that renders the product unfit for its
4    ordinary purpose." *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855,
5    878 (N.D. Cal. 2015) (citation omitted); *see also Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th
6    1297, 1303 (2009) ("The core test of merchantability is fitness for the ordinary purpose for which
7    such goods are used." (citation omitted)).  "Such fitness is shown if the product is in safe condition
8    and substantially free of defects." *Mexia*, 174 Cal. App. 4th at 1303 (internal quotation marks and
9    citation omitted).  "In cases involving human food, a party can plead that a product violates the
10   implied warranty of merchantability through allegations that the product was unsafe for
11   consumption, contaminated, or contained foreign objects." *Barnes v. Nat. Organics, Inc.*, No.
12   EDCV 22-314 JGB (PLAx), 2022 WL 4283779, at *8 (C.D. Cal. Sept. 13, 2022) (citing *Thomas
13   v. Costco Wholesale Corp.*, No. 12-cv-02908-BLF, 2014 WL 5872808, at *3 (N.D. Cal. Nov. 12,
14   2014) (citation omitted)).  In resolving Prime Hydration's motion to dismiss the FAC, the Court
15   found Castillo's allegations that chemicals in Prime Hydration's drink compromised its safety and
16   fitness for consumption – because the PFAS are "poisonous or deleterious" and "indisputably
17   linked to negative health consequences" – were sufficient at this stage.  *See* Order at 19 (citing
18   FAC ¶¶ 101-102).
19        Here, Prime Hydration argues Castillo's implied warranty claim should be dismissed
20   because it is based on an interim Environmental Protection Agency ("EPA") advisory that has
21   since been superseded and no longer reflects the best available scientific information.  Mot. at 8.
22   Prime Hydration seeks judicial notice of this document, the EPA's PFAS National Primary
23   Drinking Water ("NPDW") Regulation ("Final NPDW Regulation"), issued on April 26, 2024.
24   *See* Request for Judicial Notice ("RJN") (Dkt. No. 67) Ex. 2.  Prime Hydration also seeks judicial
25   notice of a page on the EPA's website titled "Past PFOA and PFOS Health Effects Science

3

Documents,"[1] RJN Ex. 1.[2] Federal Rule of Evidence 201 permits courts to take judicial notice of publicly available information on a government agency's website. *See Jarose v. Cnty. of Humboldt*, No. C 18-07383 SBA, 2020 WL 999791, at *4 (N.D. Cal. Mar. 2, 2020) (citing *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 999 (9th Cir. 2010)) (taking judicial notice of data publicly available on the websites of the EPA and the California Water Board). "Courts may take judicial notice of some public records, including the 'records and reports of administrative bodies,' " *U.S. v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (citation omitted), and information on government entities' websites, *Daniels-Hall*, 629 F.3d at 999. But "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth," *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018), and while "public records are generally subject to judicial notice, a court may not take judicial notice of disputed facts within public records." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 813 (N.D. Cal. 2020) (citing *Khoja*, 899 F.3d at 999); *see also Calif. Sportfishing Prot. All. v. Shiloh Grp., LLC*, 268 F. Supp. 3d 1029, 1038 (N.D. Cal. 2017) ("Courts cannot take judicial notice of the contents of documents for the truth of the matters asserted therein when the facts are disputed . . . .").

Castillo opposes Prime Hydration's request for judicial notice, contending Prime Hydration impermissibly offers the exhibits for the Court to consider their truth in resolving a disputed fact. Opp. at 2-3, 5-7. However, Castillo does not argue the contents of the exhibits are subject to reasonable dispute as inaccurate or inauthentic. That is, Castillo does not dispute the accuracy of the Final NPDW Regulation's finding that the Maximum Contaminant Level ("MCL") for PFOA and PFOS is 4.0 parts per trillion ("ppt"). Nor does she argue that the content of the exhibits is disputed in this case, as she does not argue that the safety of the Product is

---

[1] Perfluorooctanoic acid ("PFOA") and Perfluorooctanesulfonic acid ("PFOS") are two forms of PFAS.

[2] Prime Hydration previously filed a notice of new authorities in support of its motion to dismiss the FAC, to which it attached these two documents. Dkt. No. 53. As Prime Hydration filed the notice after the motion hearing, Castillo filed a motion to strike the notice pursuant to Civil Local Rule 7-3(d), Dkt. No. 54, which the Court granted, Dkt. No. 56.

4

1   determined by a particular level of PFAS.  Opp. at 8 (noting that despite "refer[ring] to the EPA's
2   2022 interim health advisories in her FAC . . . [she] does not rely on these levels in alleging that
3   the Product is unsafe for consumers").  Rather, she argues that it is improper for the Court to
4   conclude from reviewing the exhibits that, as a matter of law, the Product is safe.  Opp. at 5.  For
5   the reasons discussed below, the Court agrees, but nonetheless finds judicial notice of these
6   documents appropriate.

7   Courts routinely take judicial notice of information publicly accessible on websites of
8   government agencies, including the EPA.  *See, e.g.*, *Brown v. Brita Prods. Co.*, No. CV 23-7851-
9   DMG (RAOX), 2024 WL 4815354, at *2 (C.D. Cal. Sept. 30, 2024) (granting a request for
10  judicial notice of an excerpt from the EPA website describing drinking water regulations where
11  plaintiff opposed judicial notice but did not dispute the document's authenticity); *Epperson v.
12  Gen. Motors, LLC*, 706 F. Supp. 3d 1031, 1038 (S.D. Cal. 2023) (taking judicial notice that EPA's
13  range mileage estimate for the 2020 Chevrolet Bolt was 259 miles where plaintiff did not dispute
14  the authenticity or accuracy of the information, which was listed on a government website);
15  *AECOM Energy & Constr., Inc. v. Ripley*, No. CV 17-5398-RSWL-SSX, 2019 WL 2610953, at
16  *3 (C.D. Cal. Apr. 24, 2019) (taking judicial notice of a document from the EPA's website,
17  because although plaintiff disputed its authenticity, documents from federal agencies are self-
18  authenticating pursuant to Fed. R. Evid. 902(5)).  Because Castillo does not dispute the accuracy
19  or authenticity of these EPA records and reports, they are the proper subjects of judicial notice.
20  *See Epperson*, 706 F. Supp. 3d at 1038.

21  The authorities Castillo cites are distinguishable.  In *Zeiger v. WellPet LLC*, 304 F. Supp.
22  3d 837, 845 (N.D. Cal. 2018), the court judicially noticed the existence of certain documents
23  published on the Food and Drug Administration website regarding toxins in pet food.  However,
24  the court declined to judicially notice the documents for the truth of their contents, because the
25  documents were not regulations, guidelines, or studies that conclusively established the safety of
26  certain contaminants in pet food were safe at any level, and plaintiffs had provided evidence that
27  other professionals in the field disputed the conclusions stated in the document.  *Id.*  Because
28  plaintiffs disputed the accuracy of the content in the documents for which defendants sought

5

judicial notice, the court found the documents were subject to reasonable dispute and therefore not judicially noticeable for their truth. *Id.* Similarly, in *Daghlian v. DeVry Univ., Inc.*, the court declined to judicially notice opinions within a report where the opinion directly answered a disputed question at the heart of the case – namely, whether certain consumer protection provisions within a statute applied to colleges accredited by an accrediting agency other than the Western Association of Schools and Colleges. 461 F. Supp. 2d 1121, 1147 (C.D. Cal. 2006). Because taking as true the content of the document would result in answering a question in dispute in the case, judicially noticing the opinions stated within a report for their truth was improper. *Id.* Here, in contrast, the content of the documents for which Prime Hydration seeks judicial notice is neither disputed (i.e., the parties do not contest the MCL levels of PFAS) nor subject to reasonable dispute (i.e., whether the EPA regulations are scientifically sound). Accordingly, the Court **GRANTS** Prime Hydration's request for judicial notice of the two exhibits.

Nevertheless, the Court finds judgment on the pleadings is not appropriate here. Prime Hydration's sole argument in its Motion is that the judicially noticed documents show Castillo's allegations are unsupported and contrary to law. But the judicially noticed documents do not, as a matter of law, resolve the question of whether the amount of PFAS found in the Product is sufficiently safe for consumers or whether the Product would pass without objection in the trade, and are insufficient to disrupt the Court's previous finding that Castillo's adequately alleged an implied warranty of merchantability claim. Order at 19. The implied warranty of merchantability claim is not based solely on the fact that the PFAS levels found in the Product exceeded the EPA's recommended limit for drinking water as set forth in the interim advisories. Rather, Castillo alleges that no amount of PFAS is safe. FAC ¶ 66 ("[T]here is no 'safe' level of exposure with regard to these chemicals, and even 'trace' levels of PFAS can pose a risk to humans."). Castillo cites to several sources in support of those allegations, including a European Union agency study regarding the health risks of PFAS and a directive phasing PFAS out of production and prohibiting their manufacture. FAC ¶¶ 48, 51-52. Prime Hydration has not shown how, as a matter of law, the EPA's new, higher MCL levels establish the Product does not breach the implied warranty of merchantability.

1  That does not mean, however, that the Court finds that the Product contains unsafe levels of PFAS such that the Product breaches the implied warranty of merchantability. To be sure, it may prove difficult for Castillo to ultimately show that the Product is unsafe if the levels of PFAS found in the Product are significantly below the EPA regulations setting the MCLs for PFOA and PFOS. But, at this stage, it remains a disputed issue. "The question whether Defendant's products actually pose a risk to health is ultimately a question of fact that cannot be decided at this stage." *Bland v. Sequel Nat. Ltd.*, No. 18-CV-04767-RS, 2019 WL 4674337, at *4 (N.D. Cal. Aug. 2, 2019) (finding that plaintiff plausibly alleged breach of implied warranty, for Rule 12(c) purposes, where products contained heavy metals rendering them unfit for consumption); *see also Rodriguez v. Mondelez Glob. LLC,* 703 F. Supp. 3d 1191, 1205 (S.D. Cal. 2023) (noting determination of "unsafe level" of heavy metals in chocolate is a question of fact to be resolved at summary judgment or trial and finding plaintiff adequately pleaded implied warranty of merchantability claim). As did the plaintiff in *Bland*, Castillo alleges PFAS are harmful even at low levels because they accumulate over time, and are associated with a variety of ailments such as thyroid disorders and cancers, FAC ¶ 2, and the Product is adulterated and thus "not fit to be consumed," FAC ¶ 162. *See Bland*, 2019 WL 4674337, at *4. These allegations are sufficient to plead an implied warranty of merchantability claim. *Id.* The disputed issue of the extent of the Product's health risks will be resolved by the trier of fact.

## II.     CONCLUSION

For the foregoing reasons, Prime Hydration's motion is **GRANTED** as to Castillo's Song-Beverly claim and **DENIED** as to her Cal. Comm. Code § 2314 claim. The Court **SETS** a case management conference for **October 9, 2025**. The parties **SHALL FILE** a joint case management statement no later than noon on **September 26, 2025**.

**IT IS SO ORDERED.**

Dated: September 2, 2025

ARACELI MARTÍNEZ-OLGUÍN
**United States District Judge**